CORRIGAN, J.
This 1995 murder case has a long history in the Michigan and federal courts. Following the affirmance of defendant’s convictions in our state courts, the United States District Court for the Eastern District of Michigan, on habeas corpus review, ordered defendant’s release unless he was given a new trial in which his confession would be excluded from evidence. The district court ordered this result because of retained counsel’s deficient performance, not because of any police misconduct.
During pretrial hearings, the trial court also suppressed the testimony of two witnesses — street sweepers whose identities were “fruits” of defendant’s confession — unless the prosecution could show that it discovered the street sweepers’ identities from an independent source. Following the prosecution’s interlocutory appeal, the Court of Appeals agreed that the trial court should conduct an “inevitable discovery” hearing.
*235 We granted the prosecution’s application for leave to file an interlocutory appeal to consider the proper scope of the exclusionary rule as it applies to the testimony of the street sweepers. We reverse the Court of Appeals expansive holding that the exclusionary rule applies to the testimony of the street sweepers. Because defendant’s confession did not result from police misconduct, the purpose of the exclusionary rule is in no way served by excluding the street sweepers’ testimony. Further, the degree of attenuation between the violation of defendant’s Sixth Amendment rights and the street sweepers’ testimony dissipated any taint.
We also vacate the Court of Appeals endorsement of the federal district court’s errant legal analysis in holding that defendant’s confession must be excluded. The district court mistakenly applied the test from United States v Cronic, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984), rather than the test from Strickland v Washington, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), in holding that defendant’s Sixth Amendment rights had been violated. Nonetheless, despite the federal district court’s faulty analysis, we acknowledge the binding force of the district court’s ruling excluding defendant’s confession. We remand this case for retrial at which the street sweepers’ testimony may be admitted.[1]
I. UNDERLYING FACTS AND PROCEDURAL HISTORY
Two victims were robbed and fatally shot in one of the victim’s homes in Grand Blanc, Michigan. Kenneth Haywood told the police that he drove defendant and defendant’s accomplice, Idell Cleveland, to the home on *236 the night of the murders and waited in the car while defendant and Cleveland entered the home. Haywood heard Cleveland say, “Get on the floor” and then heard two gunshots. Haywood fled, leaving defendant and Cleveland in the house without transportation from the scene.
After interrogating Haywood, the police searched defendant’s home and obtained an arrest warrant. Defendant’s mother retained an attorney for him. Defendant told that attorney that, although he had been present when Cleveland robbed and murdered the victims, he did not know that Cleveland intended to rob the victims and he had not been involved in the murders. Defendant told counsel that he wanted to talk to the police about his noninvolvement in the crimes. Relying on defendant’s assertions of innocence, defense counsel advised defendant that one option would be to talk to the police and tell the truth. Counsel then arranged defendant’s surrender and accompanied him to the station, where defendant was arrested and later arraigned. Although the prosecutor told defendant and his counsel that he would not plea bargain or make any “deals,” defendant nonetheless insisted on talking to the police. Defense counsel also advised defendant that talking to the police might assist in efforts to negotiate a plea bargain. Defense counsel was present when the police furnished Miranda[2] warnings and when defendant waived those protections. Defense counsel then left the police station before defendant was interrogated because he assumed that he could not be present during questioning.
During the police interrogation, defendant, contrary to what he told defense counsel, admitted that he knew Cleveland had been armed and had intended to rob the *237 victims. He also admitted that Cleveland paid him with two $50 bills after the murders. He told the police that two street sweepers gave him a ride home after the murders and that he asked them to change a $50 bill. The police later located the street sweepers, who testified that defendant approached them for a ride at a gas station and asked if they had change for a $50 bill.
Followingi his 1996 jury trial, defendant was convicted of two counts of felony-murder, MCL 750.316; one count of armed robbery, MCL 750.529; and two counts of possession of a firearm during the commission of a felony, MCL 750.227b. The Court of Appeals initially affirmed defendant’s murder and felony-firearm convictions, but vacated his armed robbery conviction on double jeopardy grounds. People v Frazier, unpublished opinion of the Court of Appeals, issued February 27, 1998 (Docket No. 193891). The Court of Appeals then granted rehearing and again vacated defendant’s armed robbery conviction on double jeopardy grounds, but remanded “for a Ginther[3] hearing on the issue whether defendant was denied the effective assistance of counsel by trial counsel’s advice that he make statements to the police about his role in the crime.” People v Frazier (On Rehearing), unpublished opinion per curiam of the Court of Appeals, issued August 7, 1998 (Docket No. 193891), slip op at 2. On remand, the trial court concluded after a Ginther hearing that counsel had not been ineffective. The Court of Appeals affirmed, People v Frazier (After Remand), unpublished opinion per curiam of the Court of Appeals, issued April 21, 2000 (Docket No. 193891), and this Court denied leave to appeal, 464 Mich 851 (2001).
The United States District Court for the Eastern District of Michigan conditionally granted defendant’s *238 petition for a writ of habeas corpus on the ground that counsel abandoned defendant during the police interrogation in violation of defendant’s Sixth Amendment right to counsel under Cronic, supra. Frazier v Berghuis, unpublished opinion.of the United States District Court for the Eastern District of Michigan, issued August 6, 2003 (Docket No. 02-CV-71741DT). The federal district court ruled that counsel’s absence during a critical stage (the interrogation) “tainted the whole trial process, as evidenced by the use of Petitioner’s statements at trial.” Id., slip op at 7. The court held that “the only appropriate remedy is to not allow use of the tainted statements, should the State decide to initiate a new trial in this matter.” Id. Thus, the district court ruled that defendant’s confession would be inadmissible on retrial. The prosecution did not further appeal this decision.
The case was then set for retrial in the Genesee Circuit Court. Before trial, the trial court excluded defendant’s custodial statements for all purposes. The court, citing Wong Sun v United States, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963), also held that the exclusionary rule applied to any derivative evidence from those statements, including the testimony of the street sweepers. The court stated that “knowledge gained by the government’s own wrong cannot be used by it in the way proposed.” The court also held, however, that the prosecution could call the street sweepers to testify at trial if the prosecution could establish that it in fact discovered the identity of these witnesses from a source independent of defendant’s inadmissible statements. The prosecution appealed.[4]
*239 A split Court of Appeals panel affirmed in part and reversed in part. People v Frazier, 270 Mich App 172; 715 NW2d 341 (2006). The majority first agreed with the federal district court that the prosecution could not use defendant’s custodial statements in its case-in-chief because counsel had abandoned defendant at a critical stage of the proceedings (the police interrogation).[5] But the panel, citing Michigan v Harvey, 494 US 344; 110 S Ct 1176; 108 L Ed 2d 293 (1990), unanimously[6] reversed the trial court’s order prohibiting the use of defendant’s custodial statements for impeachment purposes.
The majority next held that the exclusionary rule and the “inevitable discovery” doctrine applied to the street sweepers’ testimony. The majority explained that the United States Supreme Court has applied the exclusionary rule to Sixth Amendment violations, and that the street sweepers’ testimony is “fruit of the poisonous tree” that must he excluded unless the prosecution can make an affirmative showing that the street sweepers’ identities would have inevitably been discovered through alternative means.[7] The majority remanded to the trial court for application of the inevitable discovery doctrine.
Judge TALBOT dissented from the majority’s holding that the exclusionary rule and the inevitable discovery doctrine apply to the street sweepers’ testimony. He opined that the exclusionary rule does not apply in the absence of police misconduct, and that the majority *240 extended the doctrine by applying it to the testimony of witnesses named in defendant’s statement to police. Further, Judge TALBOT opined that the police almost certainly would have discovered the identities of the street sweepers if defense counsel had been present at the interrogation or even if defendant had not made any statement to the police.
This Court granted the prosecution’s application for leave to appeal and denied defendant’s application for leave to cross-appeal. People v Frazier, 477 Mich 851; 720 NW2d 747 (2006). We directed the parties to address the following issues:
(1) whether the exclusionary rule applies to fruits of a confession extracted not by police misconduct, but by the abandonment of retained counsel during the interrogation, a critical stage of proceedings, in violation of United States v Cronic, 466 US 648 (1984); and, if so, (2) whether the inevitable discovery doctrine of Nix v Williams, 467 US 431 (1984), applies in such circumstances; and, if so, (3) whether the exclusionary rule should be applied narrowly as suggested in United States v Ceccolini, 435 US 268 (1978), when the information derived from the confession is the identity of witnesses. [477 Mich 851.]
II. STANDARD OF REVIEW
A lower court’s application of constitutional standards is not entitled to the same degree of deference as are factual findings. People v Jenkins, 472 Mich 26, 31; 691 NW2d 759 (2005). Application of the exclusionary rule to a constitutional violation is a question of law that is reviewed de novo. Id.
III. THE CRONIC/STRICKLAND STANDARDS
The prosecution initially urges us to ignore the federal district court’s decision and hold that the exclu *241 sionary rule does not apply to bar defendant’s confession from evidence. We decline this invitation because the prosecution has forfeited this argument. The prosecution never challenged the adverse district court decision by appealing to the United States Court of Appeals for the Sixth Circuit. Nor did the prosecution argue in the trial court or in our Court of Appeals that the federal district court decision should be disregarded. “This Court disfavors consideration of unpreserved claims of error.” People v Carines, 460 Mich 750, 761; 597 NW2d 130 (1999). Moreover, the prosecution conceded in its application for leave to appeal in this Court that it is “bound by the unchallenged federal court determination.” (Prosecution’s Application for Leave to Appeal, p v.) We decline to consider the prosecution’s argument urging us to disregard the federal district court decision. Thus, the present issue is not the admissibility of defendant’s confession, but the admissibility of the street sweepers’ testimony.
In any case,
[h]abeas corpus decisions within their scope generally are binding on the parties, on other courts, and are conclusive. ... A judgment in habeas corpus discharging the prisoner, after a final determination of the ultimate facts and of the law, is conclusive of the right to remain at liberty. Therefore, the release by federal courts of one charged in state courts is binding on the latter, and there can be no further prosecution. [4 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 147:117, p 793.]
See also Collins v Loisel, 262 US 426, 430; 43 S Ct 618; 67 L Ed 1062 (1923) (holding that a habeas corpus decision operates as res judicata on the issues of law and fact necessarily involved in the habeas corpus proceedings); Kurtz v State, 22 Fla 36, 45 (1886) (“[I]n those States where a judgment of a court in a habeas corpus proceeding discharging or remanding to custody a pris *242 oner is final, and a writ of error is allowed thereon,... the principle of res adjudicata [seems to be] applicable . . . .”).[8] In cases where the federal court conditionally grants a writ of habeas corpus, the federal court retains jurisdiction to ensure that the state court complies with the terms of the conditional writ. Gentry v Deuth, 456 F3d 687, 692 (CA 6, 2006). A state’s failure to cure the error identified in the conditional habeas court order justifies the release of the petitioner. Id. Moreover, we decline to contradict the federal court decision because doing so would create unnecessary confusion and uncertainty. Therefore, we accept as binding the district court’s ruling that defendant’s confession must be excluded on retrial.
Nonetheless, because our Court of Appeals approved of the federal district court’s legal analysis in a published opinion, we must discuss the correctness of this analysis.[9] We agree with the prosecution that the cor *243 rect Sixth Amendment analysis is the ineffective assistance of counsel test of Strickland, supra, rather than the presumed prejudice test of Cronic, supra.
Most claims of ineffective assistance of counsel are analyzed under the test developed in Strickland, supra. Under this test, counsel is presumed effective, and the defendant has the burden to show both that counsel’s performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel’s error. Strickland, supra at 687, 690, 694. But in Cronic, supra at 659-662, the United States Supreme Court identified three rare situations in which the attorney’s performance is so deficient that prejudice is presumed. One of these situations involves the complete denial of counsel, such as where the accused is denied counsel at a “critical stage” of the proceedings.[10] Id. at 659. “For purposes of distinguishing between the rule of Strickland and that of Cronic, [the] difference is not of degree but of kind.” Bell v Cone, 535 US 685, 697; 122 S Ct 1843; 152 L Ed 2d 914 (2002).
This case falls within the ambit of Strickland because none of the three Cronic situations is present. In their *244 first meeting, defendant misled counsel. He said that he was present at the crime scene, but did not know that Cleveland intended to rob the victims. Defendant insisted on waiving his right to counsel and maintaining his innocence in a statement to the police in order to obtain a favorable plea bargain.[11] Counsel advised defendant of the risks of talking to the police and even advised him not to talk to the police despite his claims of innocence. Counsel, however, relied on defendant’s assertions of innocence in advising defendant that he could talk to the police. Counsel’s advice was predicated on defendant’s false claim of innocence, and counsel cannot be faulted for advising defendant on the facts defendant had communicated to him.[12] What defendant ultimately told the police and what he told defense counsel were two different things. If defendant had given counsel the same version of events that he fur1 nished the police, counsel would most likely have advised defendant differently.
The Cronic test applies when the attorney’s failure is complete, while the Strickland test applies when counsel failed at specific points of the proceeding. Bell, supra at 697. Because counsel consulted with defendant, gave *245 him advice, and did nothing contrary to defendant’s wishes, counsel’s alleged failure was not complete. Defendant alleges only that counsel erred at a specific point of the proceeding by advising him that he could waive his right to counsel at the interrogation. Therefore, prejudice may not be presumed, and counsel’s performance should have been reviewed under the Strickland standard.[13]
Our determination that Strickland rather than Cronic applies is supported by Roe v Flores-Ortega, 528 US 470; 120 S Ct 1029; 145 L Ed 2d 985 (2000). In Roe, supra, the United States Supreme Court analyzed counsel’s failure to file an appeal under the two-pronged test set forth in Strickland rather than the presumption of prejudice test set forth in Cronic. In doing so, it stated that the decision to waive the right to appeal, much like the decision to plead guilty and waive the right to a jury trial, belonged to the defendant. Id. at 485. The Court stated that when an attorney consults with his client about the consequences of his client’s decision, the attorney’s performance can be considered deficient under the first prong of Strickland only if the attorney fails to follow his client’s express instructions. Id. at 478.
The applicability of Strickland is even more apparent in the instant case than in Roe, supra. In this case, defendant’s attorney consulted with defendant and discussed the risks of talking to the police. As in Roe, the decision to talk to the police and, thus, to waive the right against compelled self-incrimination and the right to counsel’s presence during interrogation, belonged to *246 defendant.[14] Defendant insisted on talking with the police in order to obtain a favorable plea bargain. Thus, the 2000 Court of Appeals panel correctly applied the Strickland standard rather than the Cronic standard in affirming the trial court’s finding after a Ginther hearing that defense counsel had not been ineffective.[15] The federal district court erred in holding that defendant was entitled to relief without determining whether defendant was prejudiced by counsel’s performance. Accordingly, we vacate the March 2006 published Court of Appeals opinion to the extent that it adopts or approves of the federal district court’s decision endorsing the Cronic standard. Because we are bound by the federal district court’s ruling on habeas review, we cannot disturb the erroneous ruling of the district court.[16]
*247 TV. APPLICABILITY OF THE EXCLUSIONARY RULE TO THE STREET SWEEPERS’ TESTIMONY
We next consider the Court of Appeals ruling that the exclusionary rule applies to the “fruit” of defendant’s confession — the testimony of the street sweepers.[17] We conclude that the Court of Appeals erred in holding that the exclusionary rule applies.
The suppression of evidence should be used only as a last resort. Hudson v Michigan, _ US _; 126 S Ct 2159, 2163; 165 L Ed 2d 56, 64 (2006). “[T]he exclusionary rule is ‘a harsh remedy designed to sanction and deter police misconduct where it has resulted in a violation of constitutional rights....’” People v Anstey, 476 Mich 436, 447-448; 719 NW2d 579 (2006), quoting People v Hawkins, 468 Mich 488, 512-513; 668 NW2d 602 (2003) (emphasis deleted); see also Michigan v Tucker, 417 US 433, 446; 94 S Ct 2357; 41 L Ed 2d 182 (1974), quoting United States v Calandra, 414 US 338, 347; 94 S Ct 613; 38 L Ed 2d 561 (1974) (“[T]he exclusionary rule’s ‘prime purpose is to deter future unlawful police conduct....’”). “ ‘The rule is calculated to prevent, not to repair. Its purpose is to deter — to compel respect for the constitu *248 tional guaranty in the only effectively available way — by removing the incentive to disregard it.’ ” Id., quoting Elkins v United States, 364 US 206, 217; 80 S Ct 1437; 4 L Ed 2d 1669 (I960).[18] The judicially created rule is not designed to act as a personal constitutional right of the aggrieved party. Calandra, supra at 348.[19] “[T]he proper focus is on the deterrent effect on law enforce¡ment officers, if any.” People v Goldston, 470 Mich 523, 539; 682 NW2d 479 (2004).
“Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.” Calandra, supra at 348.
“The exclusionary rule has its limitations ... as a tool of judicial control.... [In] some contexts the rule is ineffective as a deterrent.... Proper adjudication of cases in which the exclusionary rule is invoked demands a constant awareness of these limitations.... [A] rigid and unthinking application of the ... rule ... may exact a high toll in human injury and frustration of efforts to prevent crime.” *249 Terry v Ohio [392 US 1, 13-15; 88 S Ct 1868; 20 L Ed 2d 889 (1968)]. [People v Stevens (After Remand), 460 Mich 626, 636; 597 NW2d 53 (1999).]
“[Application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served,” Calandra, supra at 348, “that is, ‘where its deterrence benefits outweigh its “substantial social costs,” ’ ” Hudson, supra at 2163, quoting Pennsylvania Bd of Probation & Parole v Scott, 524 US 357, 363; 118 S Ct 2014; 141 L Ed 2d 344 (1998), quoting United States v Leon, 468 US 897, 907; 104 S Ct 3405; 82 L Ed 2d 677 (1984). “Because the exclusionary rule precludes consideration of reliable, probative evidence, it imposes significant costs: it undeniably detracts from the truthfinding process and allows many who would otherwise be incarcerated to escape the consequences of their actions.” Scott, supra at 364. The United States Supreme Court has “repeatedly emphasized that the rule’s ‘costly toll’ upon truth-seeking and law enforcement objectives presents a high obstacle for those urging application of the rule.” Id. at 364-365. Because of the costs associated with applying the exclusionary rule, the Court has been cautious against expanding it. Hudson, supra at 2163. In determining whether exclusion is proper, a court must “ ‘evaluate the circumstances of [the] case in the light of the policy served by the exclusionary rule....’” Stevens, supra at 635, quoting Brown v Illinois, 422 US 590, 604; 95 S Ct 2254; 45 L Ed 2d 416 (1975).[20]
*250 It cannot be gainsaid that this case presents no police misconduct whatsoever. Excluding defendant’s confession because of attorney error does not fulfill the goal of the exclusionary rule by deterring the police from future misconduct. Goldston, supra at 538.
The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force. [Tucker, supra at 447.]
This Court has previously opined that application of the exclusionary rule is inappropriate in the absence of governmental misconduct. See, e.g., Goldston, supra at 538 (“[T]he goal of the exclusionary rule would not be furthered where police officers act in objectively reasonable good-faith reliance on a search warrant.”); People v Elston, 462 Mich 751, 764; 614 NW2d 595 (2000) (“Because defendant failed to allege or establish a specific discovery violation, or any other sort of prosecutorial misconduct, the trial court lacked a basis upon which to punish the prosecutor by suppressing otherwise admissible evidence.”). Moreover, application of the exclusionary rule in these circumstances further encroaches “ ‘upon the public interest in prosecuting those accused of crime and having them acquitted or *251 convicted on the basis of all the evidence which exposes the truth.’ ” Calandra, supra at 351, quoting Alderman v United States, 394 US 165, 175; 89 S Ct 961; 22 L Ed 2d 176 (1969). Because the street sweepers’ identities were not obtained as a result of any police misconduct, the Court of Appeals erred in applying the exclusionary rule to their testimony.
We agree with Judge TALBOT that Tucker supports this conclusion. In Tucker, the defendant was interrogated before the United States Supreme Court had decided Miranda, supra, but the Miranda decision nonetheless applied because it had been decided before the defendant’s trial. During the interrogation, the police did not inform the defendant, as they were required to do after Miranda, that counsel would be appointed if the defendant could not afford one. Tucker, supra at 436. During questioning, the defendant named an alibi witness. Id. The witness, rather than confirming the defendant’s alibi, discredited his story. Id. at 436-437.
The Tucker Court held that the exclusionary rule did not apply to the witness’s testimony. Id. at 452. The Court explained that the police conduct was a departure from later-enacted “prophylactic standards” rather than actual misconduct, so the exclusion of the illegally obtained derivative evidence would not deter future misconduct. Id. at 446.[21] The Court also emphasized that the evidence at issue was not a statement by the defendant, but was rather the testimony of a witness *252 whom the police discovered as a result of the defendant’s statements, so that “the reliability of [the] testimony was subject to the normal testing process of an adversary trial.” Id. at 449.
The instant case offers even stronger grounds than Tucker against excluding the testimony of the witnesses. Both Tucker and defendant gave statements without counsel present and identified witnesses in their statements. But while Tucker was advised of only some of his rights before waiving his right to counsel, defendant was advised of all of his Miranda rights before waiving his right to counsel. Tucker did not have counsel present when he waived his right to counsel, while defendant did. There was no police misconduct in either case. In both cases, the confession was suppressed, but in Tucker, the witness identified during the confessions was permitted to testify. The same outcome should pertain here. Here, as in Tucker, no deterrent purpose would be served by barring the witnesses’ testimony. Moreover, the propriety of this outcome is reinforced here, as in Tucker, because witnesses were not subjected to custodial pressures, and would be subject to cross-examination.
Our holding is also supported by People v Kusowski, 403 Mich 653; 272 NW2d 503 (1978). In Kusowski, supra at 662, this Court, citing Ceccolini and Tucker, held that the exclusionary rule does not apply to third-party testimony discovered as a result of a Miranda violation. This Court explained that “the interest in preventing future police conduct which violates Miranda does not justify depriving the government of use of the evidence.” Kusowski, supra at 662.
Further, even if defendant’s confession had been obtained as a result of police misconduct, we hold that the exclusionary rule would not apply to the street *253 sweepers’ testimony. Under the attenuation exception to the exclusionary rule, exclusion is improper when the connection between the illegality and the discovery of the challenged evidence has “ ‘become so attenuated as to dissipate the taint,’ ” Wong Sun, supra at 487, quoting Nardone v United States, 308 US 338, 341; 60 S Ct 266; 84 L Ed 307 (1939). Attenuation can occur when the causal connection is remote or when “the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.” Hudson, supra at 2164.
In Ceccolini, supra at 276-278, the United States Supreme Court held that the connection between police misconduct and the discovery of witnesses who will testify at trial is often too attenuated to justify application of the exclusionary rule:
The greater the ■willingness of the witness to freely testify, the greater the likelihood that he or she will be discovered by legal means and, concomitantly, the smaller the incentive to conduct an illegal search to discover the witness. Witnesses are not like guns or documents which remain hidden from view until one turns over a sofa or opens a filing cabinet. Witnesses can, and often do, come forward and offer evidence entirely of their own volition. And evaluated properly, the degree of free will necessary to dissipate the taint will very likely be found more often in the case of live-witness testimony than other kinds of evidence. The time, place and manner of the initial questioning of the witness may be such that any statements are truly the product of detached reflection and a desire to be cooperative on the part of the witness. And the illegality which led to the discovery of the witness very often will not play any meaningful part in the witness’ willingness to testify.
. . . Rules which disqualify knowledgeable witnesses from testifying at trial are, in the words of Professor *254 McCormick, “serious obstructions to the ascertainment of truth”; accordingly, “[f]or a century the course of legal evolution has been in the direction of sweeping away these obstructions.” C. McCormick, Law of Evidence § 71 (1954). [Ceccolini, supra at 276-278.]
The Ceccolini Court concluded that “since the cost of excluding live-witness testimony often will be greater, a closer, more direct link between the illegality and that kind of testimony is required.” Id. at 278.
[T]he exclusionary rule should be invoked with much greater reluctance where the claim is based on a caused relationship between a constitutional violation and the discovery of a live witness than when a similar claim is advanced to support suppression of an inanimate object. [Id. at 280.]
Applying these principles, we conclude that the degree of attenuation was sufficient to dissipate the connection between any Sixth Amendment violation and the testimony. Ceccolini, supra at 279. The street sweepers testified of their own free will during the first trial, and any violation of defendant’s right to counsel during the interrogation played no meaningful part in the street sweepers’ willingness to testify. Moreover, we have no indication that their testimony was, or would be in the next trial, coerced.[22] We conclude, as did the Ceccolini Court, that, “[t]he cost of permanently silencing [the third-party testimony] is too great for an *255 evenhanded system of law enforcement to bear in order to secure such a speculative and very likely negligible deterrent effect.” Ceccolini, supra at 280. Because of the remote causal connection between any Sixth Amendment violation and the discovery of the street sweepers’ identities, there is no justification for suppression of the street sweepers’ testimony.[23]
In sum, the Court of Appeals erred in holding that the exclusionary rule applies to the street sweepers’ testimony. Law enforcement did not engage in any misconduct in obtaining defendant’s confession or discovering the identity of the street sweepers, so the goal of the exclusionary rule would not be served by exclud *256 ing the street sweepers’ testimony. In any case, the degree of attenuation between the street sweepers’ testimony and any violation of defendant’s Sixth Amendment rights is sufficient to dissipate any taint.[24]
V CONCLUSION
We reverse the Court of Appeals holding that the exclusionary rule applies to the street sweepers’ testimony. We further vacate the Court of Appeals endorsement of the federal district court’s Cronic analysis. We remand for further proceedings consistent with this opinion.
Taylor, C.J., and Weaver, Young, and Markman, JJ., concurred with CORRIGAN, J.

 We do not disturb the Court of Appeals holding that defendant’s statements are admissible for impeachment purposes, which is not at issue in this appeal.

 Miranda v Arizona, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

3 People v Ginther, 390 Mich 436; 212 NW2d 922 (1973).

 Because the prosecution appealed the trial court’s decision, the trial court never held a hearing regarding whether the police would have inevitably discovered the street sweepers’ identities.

 In his partial dissent, Judge Talbot stated that whether defendant’s Sixth Amendment rights were violated was not an issue before the Court. Judge Talbot stated that he was not sure of the correctness of the federal district court’s decision that defendant was denied his right to counsel, but that the Court of Appeals was bound by the unchallenged federal court determination.

 Judge Talbot joined the majority on this point.

 But the panel disagreed with the trial court that the prosecution was required to show that it actually discovered the street sweepers’ identities through independent legal means.

 Although the federal district court’s habeas decision is binding on the parties in this particular case, it is not binding precedent for other cases. See Abela v Gen Motors Corp, 469 Mich 603, 606-607; 677 NW2d 325 (2004) (“Although state courts are bound by the decisions of the United States Supreme Court construing federal law, there is no similar obligation with respect to decisions of the lower federal courts.” [Citations omitted.]).

 The dissent would have us leave unquestioned the federal district court’s analysis. But the Court of Appeals opinion approving the district court’s analysis is published and is binding precedent for the Court of Appeals and lower courts. MCR 7.215(J)(1). Even if the Court of Appeals approval of the district court’s opinion is dicta, we will not allow that dicta to stand when it appears in a precedentially binding opinion and is erroneous. We decline to follow the dissent’s suggestion to vacate the Court of Appeals dicta without any explanation of why we are doing so. Rather, the parties and the bench and bar benefit when we explain the reasoning underlying our rulings. Further, although the district court’s decision is binding on the admissibility of defendant’s confession, the district court did not decide whether the street sweepers’ testimony is admissible. If defendant is convicted on retrial, this issue will likely be raised on appeal in the Michigan courts and on habeas review in federal *243 court. Our review of this issue at this juncture will aid those courts that might he required to review this issue in the future. It will also contribute to the broader debate regarding the proper application of the Cronic and Strickland standards.
We also reject the dissent’s suggestion that we have not genuinely attempted to execute the federal order. We have complied with that order, contrary to the prosecution’s request that we violate the order by admitting defendant’s confession. See n 16 of this opinion.

 The other two situations in which prejudice is presumed are as follows: (1) “counsel entirely fails to subject the prosecution’s case to meaningful adversarial testing”; and (2) where counsel is called upon to render assistance under circumstances where competent counsel very likely could not. Cronic, supra at 659-660.

 In this postarraignment interrogation case, defendant had a Sixth Amendment right to counsel at the police interrogation, a critical stage of the proceedings. Michigan v Jackson, 475 US 625, 629-630; 106 S Ct 1404; 89 L Ed 2d 631 (1986). But an accused may waive his Sixth Amendment right to counsel if the waiver is knowing, intelligent, and voluntary. People v Williams, 470 Mich 634, 640; 683 NW2d 597 (2004). Defendant may, of course, even waive counsel at a critical stage of the proceedings. See, e.g., United States v Wade, 388 US 218, 237; 87 S Ct 1926; 18 L Ed 2d 1149 (1967) (holding that the defense counsel was required to he present at the lineup — a “critical stage” — absent an “intelligent waiver” by the defendant).

 Additionally, counsel, relying on previous experience, believed that the prosecution might change its position and make a plea offer after defendant talked to the police.

 Although we hold that the federal district court should have applied the Strickland standard, we do not apply the Strickland test to the facts of this case or offer any opinion regarding the effectiveness of counsel.

 We reject defendant’s argument that his waiver of counsel was not knowing and intelligent because it was made on the advice of defense counsel. The 1998 Court of Appeals panel decided that defendant’s waiver of counsel was valid. The federal district court’s failure to analyze whether defendant’s waiver of counsel was valid further illustrates its faulty reasoning in concluding that Cronic rather than Strickland applies.

 This Court denied leave to appeal that decision. 464 Mich 851 (2001).

 We reject the dissent’s argument that we have foreclosed any possibility of holding that the derivative evidence (the street sweepers’ testimony) should be excluded by “flatly refus[ing] to accept the validity of the district court’s order.” Post at 261. As we have clearly stated, we recognize that the district court’s ruling is binding, and we accept for purposes of this case that defendant’s Sixth Amendment rights were violated and that his confession must be excluded. We have scrupulously honored the district court’s order, which provides, in pertinent part:
[T]he only appropriate remedy is to not allow use of [defendant’s] tainted statements, should the State decide to initiate a new trial in this matter.
The Court ORDERS that the warden release Petitioner from custody, unless the State of Michigan initiates a new trial in this *247 case, consistent with this Court’s Opinion, within one hundred and twenty (120) days from the entry of this Order. [Frazier v Berghuis, supra, slip op at *7-8.]
The district court did not rule on the admissibility of the street sweepers’ testimony. In compliance with the district court’s order, we are remanding for a new trial in which defendant’s confession must be excluded from evidence. Our disagreement with the district court’s ruling regarding the admissibility of defendant’s statements in no way affects our ruling regarding the admissibility of the street sweepers’ testimony.

 “[X]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or ‘fruit of the poisonous tree.’ ” Segura v United States, 468 US 796, 804; 104 S Ct 3380; 82 L Ed 2d 599 (1984) (internal citations omitted).

 While courts must be concerned with preserving the integrity of the judicial process, this concern has limited force as a justification for applying the exclusionary rule. Stone v Powell, 428 US 465, 485; 96 S Ct 3037; 49 L Ed 2d 1067 (1976).

 In Stone, supra at 488 n 24, the United States Supreme Court quoted Professor Anthony Amsterdam:
“The rule is unsupportable as reparation or compensatory dispensation to the injured criminal; its sole rational justification is the experience of its indispensability in ‘exertfing] general legal pressures to secure obedience to the Fourth Amendment on the part of... law-enforcing officers.’ As it serves this function, the rule is a needed, but grud[g]ingly taken, medicament; no more should be swallowed than is needed to combat the disease. Granted that so many criminals must go free as will deter the constables from blundering, pursuance of this policy of liberation beyond the confines of necessity inflicts gratuitous harm on the public interest....” Search, Seizure, and Section 2255: A Comment, 112 U. Pa. L. Rev. 378, 388-389 (1964) (footnotes omitted).

 The dissent cites United States v Wade, 388 US 218, 240-241; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), and Massiah v United States, 377 US 201, 207; 84 S Ct 1199; 12 L Ed 2d 246 (1964), for the proposition that the exclusionary rule is an appropriate remedy for a Sixth Amendment violation. But those cases do not hold that derivative evidence discovered without any police misconduct whatsoever must be excluded from evidence. In both Wade and Massiah, the defendant’s Sixth Amendment *250 rights were violated because of police misconduct. See Wade, supra at 220 (an FBI agent conducted a pretrial lineup [a critical stage of the proceedings] without notice to and in the absence of the defendant’s attorney); Massiah, supra at 201 (federal agents, without notice to the defendant’s attorney, arranged a meeting between the defendant and an accomplice turned informant and eavesdropped on the conversation). No such police misconduct occurred here.

 We reject the dissent’s contention that Tucker is inapplicable because the Tucker defendant’s Sixth Amendment rights were not violated. The dissent ignores that the Tucker Court based its holding that the exclusionary rule did not apply to the derivative evidence on the narrow ground that the deterrence rationale of the exclusionary rule would not he fulfilled by excluding the evidence, because the police did not engage in misconduct. Tucker, supra at 447-448. We base our holding on the same ground.

 The dissent argues that the street sweepers’ failure to approach the police within one week of the crimes shows that they were not aware of the murders or did not connect the murders with defendant. But this fact actually supports our conclusion that the street sweepers testified of their own free will. In Ceccolini, supra at 279, the Court held that the substantial time that elapsed between the illegal search, the police contact with the witness, and the testimony at trial demonstrated that the witness testified of her own free will. We fail to see how the street sweepers’ initial ignorance of the murders demonstrates their unwillingness to testify.

 The dissent argues,
In contrast to the situation in Ceccolini, the identities of the street sweepers were not known to investigators, nor were they likely to he uncovered in the course of the police investigation.. .. [I]t appears that the relationship between discovering the identities of the street sweepers and defendant’s illegal interrogation is not attenuated because the identities were revealed as a direct result of defendant’s interrogation. [Post at 267.]
But Ceccolini, supra at 277, holds: “ ‘The fact that the name of a potential witness is disclosed to police is of no evidentiary significance, per se, since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give.’ ” (Citation omitted.) The attenuation exception to the exclusionary rule, unlike the inevitable discovery exception, does not focus primarily on the likelihood of discovering a five witness. Rather, Ceccolini holds that the attenuation exception applies when the connection between police misconduct and the discovery of witnesses who will testify at trial is too attenuated to justify application of the exclusionary rule. Attenuation can occur when the causal connection is remote or when “the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.” Hudson, supra at 2164. Here, the attenuation exception applies because the illegality played no meaningful role in the street sweepers’ decision to testify, and the costs of excluding the street sweepers’ testimony would outweigh the interests served by its suppression.

 The dissent argues that it is questionable whether the identities of the street sweepers would inevitably have been discovered during the course of the police investigation. We agree. But the inevitable discovery doctrine is an exception to application of the exclusionary rule. Stevens, supra at 636. Because the exclusionary rule does not apply to the street sweepers’ testimony, the inevitable discovery exception is also inapplicable.