# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DERRIN TOREY ABBOTT,

Defendant-Appellant.

UNPUBLISHED
April 12, 2018

No. 336332
Wayne Circuit Court
LC No. 16-006549-01-FC

Before: SAWYER, P.J., and HOEKSTRA and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his consolidated jury trial convictions. In lower court number 16-006549-01-FC, defendant was convicted of conducting a criminal enterprise, MCL 750.159i(1), five counts of breaking and entering a building with intent to commit larceny ("breaking and entering"), MCL 750.110, five counts of safe breaking, MCL 750.531, and five counts of possession of burglar's tools, MCL 750.116. In lower court number 16-003219-FH, defendant was convicted of breaking and entering, MCL 750.110, conspiracy to commit breaking and entering, MCL 750.157a and MCL 750.110, and possession of burglar's tools, MCL 750.116. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12. In lower court number 16-006549-01-FC, the trial court sentenced defendant to 20 to 40 years' imprisonment for conducting a criminal enterprise and for each safe breaking conviction, and 10 to 20 years' imprisonment for each breaking and entering and possession of burglar's tools convictions. In lower court number 16-003219-FH, the trial court sentenced defendant to 10 to 20 years' imprisonment for each of the breaking and entering, conspiracy to commit breaking and entering, and possession of burglar's tools convictions. We affirm.

Defendant contends that the prosecution presented insufficient evidence to demonstrate that defendant actually committed the charged offenses. A challenge to the sufficiency of the evidence is reviewed de novo. *People v Harrison*, 283 Mich App 374, 377-378; 768 NW2d 98 (2009). The evidence must be viewed "in the light most favorable to the prosecution in order to determine whether a rational trier of fact could have found that the prosecution proved the elements of the crime beyond a reasonable doubt." *People v Levigne*, 297 Mich App 278, 281-282; 823 NW2d 429 (2012). It is the role of the trier of fact to determine the weight of the evidence and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008), citing *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992).

-1-

When reviewing a challenge to the sufficiency of the evidence, "[a]ll conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted). " 'It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences.' " *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016), quoting *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

As explained by this Court, "identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005), citing *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

Defendant contends that the prosecution failed to present sufficient evidence during trial to permit a finding that he committed the charged crimes. Specifically, defendant correctly observes that no eyewitness during trial identified defendant as a perpetrator of the break-in incidents, and that the prosecution presented no "circumstantial DNA, fingerprint, or other forensic evidence." Regardless, defendant's contention is without merit.

Defendant concedes in his brief on appeal that the prosecution presented evidence that defendant was in possession of "recently stolen property," but asserts that the evidence alone was insufficient to support a finding that he was the individual responsible for the charged offenses. However, defendant relies on this bare assertion without providing any legal authority or developed argument in support of his proposition. *Henry*, 315 Mich App at 148.

Regardless, the prosecution presented ample circumstantial evidence during trial to establish that defendant was a perpetrator of the break-ins, he committed multiple breaking and entering offenses, he committed safe breaking, he possessed burglar's tools, he conducted a criminal enterprise involving the break-ins, and he was part of a conspiracy to commit breaking and entering.

The prosecution presented evidence during trial that a string of break-ins of businesses occurred from June 2015 to March 2016. The break-ins shared many similarities, including extensive damage to the exterior doors of the affected businesses, and safes that either appeared to have been broken into through a combination of cutting with tools and blows from a sledgehammer, or safes that were missing from the store following the break-ins.

Thus, the jury could have reasonably concluded that defendant was a perpetrator of the charged offenses based on the fact that a cellular phone registered in his name and containing photographs of himself was found at the scene of one of the break-ins, and a search of his home revealed items that were stolen property from a Footlocker and items that were likely taken from the Coin-O-Matic laundromat. Similarly, a search of defendant's automobile repair shop revealed that defendant possessed multiple sledgehammers and crowbars, a cutting wheel grinder, a large truck with a front trailer hitch, a battering ram designed to fit inside of a trailer hitch, and another damaged or under construction battering ram. Notably, those were the tools

that the prosecution alleged that defendant used to perpetrate the string of break-ins. Therefore, there was ample evidence for the jury to infer from these facts that defendant actually committed the charged offenses.

Defendant next contends that he was denied a fair trial when the prosecution introduced evidence relating to similar "uncharged" offenses.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1). Defendant concedes in his brief on appeal that his trial counsel did not object to the introduction of the challenged evidence. Therefore, this issue is unpreserved.

"In order to preserve the issue of effective assistance of counsel for appellate review, the defendant should make a motion in the trial court for a new trial or for an evidentiary hearing." *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Defendant did not make a motion in the trial court for a new trial, nor did he move for an evidentiary hearing, therefore, this issue is unpreserved, and this Court's review is limited to mistakes apparent on the record.

Generally, "[t]he decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion." *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013), citing *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "A trial court abuses its discretion when it makes an error of law in the interpretation of a rule of evidence." *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015), citing *Duncan*, 494 Mich at 723. Further, "[a] trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes[.]" *People v Swain*, 288 Mich App 609, 628-629; 794 NW2d 92 (2010). "We review such questions of law de novo." *Jackson*, 498 Mich at 257, citing *Duncan*, 494 Mich at 723. "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *Jackson*, 498 Mich at 257 (quotation marks and citation omitted).

However, unpreserved evidentiary errors are reviewed for plain error affecting a defendant's substantial rights. *Carines*, 460 Mich at 763. "This Court reviews unpreserved issues, constitutional and nonconstitutional, for plain error." *People v Hanks*, 276 MIch App 91, 92; 740 NW2d 530 (2007). To avoid forfeiture under the plain error rule, the defendant must demonstrate that an error occurred, the error was plain, and the plain error affected substantial rights. *Carines*, 460 Mich at 763. "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015).

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007) (quotation marks and citation omitted). Generally, when

"an evidentiary hearing on defendant's claims of ineffective assistance has not been held, this Court's review is limited to mistakes apparent on the record." *People v Scott*, 275 Mich App 521, 526; 739 NW2d 702 (2007).

MRE 404(b) provides, in relevant part:

> (b) Other crimes, wrongs, or acts.

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"MRE 404(b) 'is a rule of legal relevance' that 'limits only one category of logically relevant evidence': '[i]f the proponent's only theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question, the evidence is not admissible.' " *Jackson*, 498 Mich at 258, quoting *People v VanderVliet*, 444 Mich 52, 61-63; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994) (alteration in original). However, "by its plain terms, MRE 404(b) only applies to evidence of crimes, wrongs, or acts 'other' than the 'conduct at issue in the case' that risks an impermissible character-to-conduct inference. Correspondingly, acts comprised by or directly evidencing the 'conduct at issue' are not subject to scrutiny under MRE 404(b)." *Jackson*, 498 Mich at 262 (citations omitted).

Defendant contends that the trial court erred when it admitted evidence relating to "uncharged similar acts" committed by defendant. Specifically, defendant contends that he was only charged with breaking and entering, possession of burglar's tools, and safe breaking relating to the following break-in incidents: (1) November 13, 2015, at a 3785 Gratiot Avenue Kentucky Fried Chicken; (2) November 26, 2015, at a 15405 Gratiot Avenue Little Caesars; (3) December 28, 2015, at a 14319 Greenfield Road Little Caesars; (4) March 7, 2016, at a 16511 Harper Avenue Checkers; and (5) March 21, 2016, at a 14712 Mack Avenue Footlocker. As a result, defendant contends, the evidence presented during trial relating to the other break-ins was other-acts evidence, and he was prejudiced by the prosecution's failure to provide notice that it intended on presenting that evidence, and by the admission of that evidence.

However, defendant's assertion that those incidents related to uncharged conduct is unsupported by the record. Defendant was charged with one count of conducting a criminal enterprise. With regard to that offense, the prosecution presented evidence that defendant committed or conspired to commit breaking and entering and safe breaking at the following locations and dates: (1) June 13, 2015, at a 12555 Grand River Avenue Little Caesars; (2) July 2, 2015 at a 15405 Gratiot Avenue Little Caesars; (3) August 17, 2015, at a 2918 West Davison Street Little Caesars; (4) September 16, 2015, at a 540 East Warren Avenue Little Caesars; (5) October 4, 2015, at a 16701 Harper Avenue Popeyes Louisiana Kitchen; (6) October 26, 2015, at a 14180 Gratiot Popeyes Louisiana Kitchen; (7) October 26, 2015, at a 14203 West Seven Mile

Road Kentucky Fried Chicken; (8) December 7, 2015, at a 530 East Warren Avenue Little Caesars; (9) December 8, 2015, at a 9137 Grand River Avenue Church's Chicken; (9) December 21, 2015, at a 12555 Grand River Avenue Little Caesars; (10) December 28, 2015, at a 14319 Greenfield Road Little Caesars; (11) January 31, 2016, at a 12255 Grand River Avenue Little Caesars; (12) February 1, 2016, at a 12712 Fenkell Street Little Caesars; and (13) February 15, 2016, at a 1700 East Seven Mile Road Coin-O-Matic.

As discussed above, MRE 404(b) "only applies to evidence of crimes, wrongs, or acts 'other' than the 'conduct at issue in the case' that risks an impermissible character-to-conduct inference." *Jackson*, 498 Mich at 262. Therefore, defendant's contentions are misplaced, as MRE 404(b) was inapplicable to the challenged evidence as that evidence pertained directly to the conduct at issue in his case.[1]

Defendant contends that he is entitled to a presumption of prejudice because his counsel was unable to prepare for the consolidated trial, or in the alternative, his trial counsel was ineffective for failing to consult with him before trial.

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing Const 1963, art 1, § 20, and US Const, Am VI. Generally, "[i] n order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51; see also *Strickland v Washington*, 466 US 668, 694-696; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

"But in [*United States v*] *Cronic*, [466 US 648, 659-662; 104 S Ct 2039; 80 L Ed 2d 657 (1984)], the United States Supreme Court identified three rare situations in which the attorney's performance is so deficient that prejudice is presumed." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). " 'For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, [the] difference is not of degree but of kind.' " *Id*. at 243, quoting *Bell v Cone*, 535 US 685, 697; 122 S Ct 1843; 152 L Ed 2d 914 (2002) (alteration in original). "The *Cronic* test applies when the attorney's failure is *complete*, while the *Strickland* test applies when counsel failed at specific points of the proceeding." *Frazier*, 478 Mich at 244, citing *Bell*, 535 US at 697. "*Cronic* applies in 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.' " *Woods v Donald*, ___ US ___, ___; 135 S Ct 1372, 1378; 191 L Ed 2d 464 (2015), quoting *Cronic*, 466 US at 658.

---

[1]Defendant also contends, in a cursory fashion, that his defense counsel at trial was ineffective for failing to object to the admission of that evidence. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). For the same reasons discussed above, defendant's contention is without merit, as defendant only asserts that his defense counsel should have advanced a meritless argument during trial.

"Circumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 US at 659-660. "But every refusal to postpone a criminal trial will not give rise to such a presumption." *Id*. at 661. The United States Supreme Court explained in *Cronic* that it did not find counsel to be ineffective in *Avery v Alabama*, 308 US 444; 60 S Ct 321; 84 L Ed 377 (1940), where "counsel was appointed in a capital case only three days before trial, and the trial court denied counsel's request for additional time to prepare," because "evidence and witnesses were easily accessible to defense counsel, the circumstances did not make it unreasonable to expect that counsel could adequately prepare for trial during that period of time." *Cronic*, 466 US at 661 (citation omitted).

The trial court held a calendar conference on August 4, 2016. During the calendar conference, the prosecutor moved to consolidate lower court numbers 16-003219-FH and 16-006549-01-FC because of the "predicate cases and that the [conducting a criminal enterprise] count specifically references the incident in 3219." The trial court queried if defendant had any objections, and defense counsel for lower court number 16-003219-FH replied, "[n]o, Your Honor, not to the consolidation." The trial court then granted the prosecutor's motion to consolidate. The trial court entered an order to that effect on the same day.

On October 3, 2016, the first day of trial, defense counsel for lower court number 16-006549-01-FC, Jeffrey Edison, explained that defense counsel for lower court number 16-003219-FH, Steven Scharg, was no longer representing defendant. Edison explained that he and Scharg had originally intended to try the consolidated trial together, wherein Scharg would have prepared for and focused on "the Footlocker counts," and Edison would have been responsible for focusing on "all the other counts in the Information." He stated that he first learned that Scharg was no longer representing defendant on September 29, 2016, after Edison had returned from a vacation. Edison noted that he possessed "the discovery regarding the Footlocker matter," but that he "was not focused in terms of [his] preparation at trial on the Footlocker issues until" the previous weekend. Therefore, Edison "move[d] at [that] time that the Footlocker counts be separated out as it was initially based on the prosecutor's charging responsibility[.]" Specifically, Edison requested that "Counts Eighteen, Nineteen, Twenty, and Twenty-One in the Information" be "separated out."

In response, the prosecutor noted that Edison had not objected to her earlier motion to consolidate the cases, that allegations related to "the Footlocker offense" were raised in "Count One," and that "Count One [was] a count that Mr. Edison was representing the defendant on in this case initially." Further, the prosecutor explained that she did not anticipate "putting on any Footlocker evidence for a few days," and therefore, she was "not sure what prejudice the defendant would have in this regard[.]"

The trial judge observed that defendant had initially retained three attorneys, Edison, DeWayne Boyd, and Scharg. He explained that approximately "a week-and-a-half ago, Mr. Scharg notified this Court that defendant had fired him and that because he would be participating in this trial." The trial judge observed that "the defense had no objection to the consolidation," and that defendant was now requesting to "sever" some of the consolidated

counts because defendant had "fired an attorney that was going to focus on those counts for purposes of trial." Thus, the trial judge explained that "the situation we now find ourselves in is due to the defendant's act of firing an attorney who had divided his efforts to focus in on four of the 21 counts that have been filed here."

The trial judge noted that he "recall[ed] on a number of occasions that Mr. Scharg made it clear that Mr. Edison was the lead on this case," and that there was "no basis for severance other than perhaps an argument that Mr. Edison needs to get up to speed on those counts." He then "made an offer" to Edison, specifically, that if Edison believed that he "need[ed] additional time to look at the discovery as it relates to those counts, which you represented to me you had already reviewed, I'll certainly provide it to [sic] you." The trial judge stated that there were "perhaps seven witnesses, maybe as many as eight, that will relate to those counts," and that if Edison asked "for a continuance or additional time through the trial, I'll provide it." The trial judge also "instruct[ed] the prosecution for purposes of the introduction of evidence that will be the last portion of its that will -- it will introduce at trial, thereby providing the defense with additional time to review and focus in on those counts and that discovery to put him [sic] in a better position to [sic] represent his client."

Therefore, the trial court did not find any "prejudice," and stated that any prejudice "could be addressed" with "the Court's offer of the continuance during trial." The trial court then denied the motion. Edison then asserted that, as a factual matter, defendant did not fire Scharg, but rather, it was Edison's "understanding there was some problems in a pending federal case and as a result of those issues in the federal matter Mr. Scharg saw fit to withdraw in this matter."

While Edison stated that he planned on Scharg focusing on "the Footlocker counts," Edison admitted that he possessed the relevant discovery materials relating to those counts. Further, the trial court instructed the prosecution to present the evidence relating to "the Footlocker counts" in the final portion of its case in chief, and it offered to provide Edison with additional time to review the evidence relating to "the Footlocker counts" upon Edison's request. Moreover, the trial court also noted that Scharg "made it clear that Mr. Edison was the lead on this case," and that there was "no basis for severance other than perhaps an argument that Mr. Edison needs to get up to speed on those counts."

There is nothing in the record to suggest that Edison took advantage of the trial court's request to provide him with additional time to review the evidence relating to the Footlocker break-in. In fact, the first evidence relating to the Footlocker break-in was presented on the fourth day of trial. Further, the charges arising from lower court number 16-003219-FH, breaking and entering, conspiracy to commit breaking and entering, and possession of burglar's tools, were of a similar nature to the charges against defendant in lower court number 16-006549-01-FC.

Therefore, there is no reason to conclude that Edison lacked sufficient time to prepare for trial with regard to "the Footlocker counts," because Edison had access to the evidence against defendant, he was "the lead" counsel for the charges against defendant, he declined to request additional time to prepare for trial with regard to those charges, and those charges were similar in nature to the charges Edison initially intended to focus his efforts on during trial.

Defendant also contends, in a cursory fashion, that he was otherwise denied the effective assistance of counsel because Edison was prevented from consulting with defendant relating to "the Footlocker counts" before trial. Defendant's contention is unsupported by the record, and it specifically conflicts with the trial court's recollection that "on a number of occasions that Mr. Scharg made it clear that Mr. Edison was the lead on this case[.]" Nor did Edison state that he was unable to effectively communicate with defendant on the matter, which is unsurprising when considering that the charge of conducting a criminal enterprise against defendant included allegations regarding the Footlocker break-in. Therefore, defendant has failed to carry his burden to demonstrate that he was denied the effective assistance of counsel.

Finally, defendant asserts that he was denied a fair and impartial trial when the prosecution elicited testimony from Detective Macy regarding defendant's alleged previous parole warrants.

Generally, to preserve a claim of prosecutorial misconduct "for appellate review, a defendant must have timely and specifically objected below, unless an objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defense counsel did not raise an objection below, and therefore, this claim is unpreserved for appellate review. "This Court reviews unpreserved issues, constitutional and nonconstitutional, for plain error." *Hanks*, 276 Mich App at 92.

Generally, "[t]he test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Mesik (On Reconsideration)*, 285 Mich App 535, 541; 775 NW2d 857 (2009), citing *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). This Court considers claims of prosecutorial misconduct on a case-by-case basis, and the prosecutor's remarks must be considered in context. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial," and "[t]hey are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 70.

During trial, Detective Macy testified that one of the robbed store's employees discovered a cellular phone in the store's drive-through that morning, and that the cellular phone was registered to defendant. Detective Macy proceeded to testify that after he learned that the cellular phone was registered to defendant, he "ran" defendant's name "through LEIN and it brought back his information as well as related information to him from previous parole --[.]" Defense counsel objected to Detective Macy's testimony, and Detective Macy finished his sentence by stating the word "warrants." The trial court sustained defense counsel's objection.

Contrary to defendant's assertion, there is nothing in the record to suggest that the prosecutor intended for Detective Macy to provide any testimony regarding defendant's alleged previous parole warrants. Specifically, after Detective Macy testified that he learned that the cellular phone was registered to defendant, the prosecutor asked him, "What did you do with that information?" Following defense counsel's objection, the prosecutor then asked Detective Macy if he learned defendant's address. And, as discussed above, the trial court sustained defense counsel's objection to Detective Macy's testimony. Therefore, there is no reason to conclude

that the prosecution engaged in a pattern of eliciting impermissible testimony during trial. Defendant has also entirely failed to demonstrate how any error relating to Detective Macy's testimony was tantamount to outcome-determinative prejudice, given the abundant evidence of defendant's guilt discussed above.

       Affirmed.

                       /s/ David H. Sawyer
                       /s/ Joel P. Hoekstra
                       /s/ Christopher M. Murray