# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KENNETH ALLAN MARR,

Defendant-Appellant.

UNPUBLISHED
October 18, 2018

No. 337518
Wayne Circuit Court
LC No. 16-007199-01-FH

Before: SHAPIRO, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his conviction of felonious assault, MCL 750.82. Defendant was sentenced to two years' probation. We affirm.

## I. FACTS

This case arises from an argument that occurred on July 28, 2016, at the Detroiter Bar in Detroit, Michigan. Chelsea Lane, the victim, testified that around 11:00 p.m. that night, she went to the Detroiter Bar with three friends, John,[1] Lucas Kurrle, and Billie Sisung. According to Lane, as they sat at a table eating, defendant, who was sitting at the bar about ten feet away with his friend, Richard Castle, shouted at Lane's table about the then-upcoming presidential election. According to Castle, he and defendant had been discussing politics and defendant was responding to a remark he heard from Lane's table, and that a conversation then ensued between defendant and the people at Lane's table. Lane testified that when she and her friends responded, defendant's reaction was "very aggravated." By contrast, Castle testified that although the conversation was loud, and both defendant and Lane's group were using profanity, the conversation did not seem violent or aggressive. According to Lane, upon learning that defendant was a former Marine, she and her friends thanked him for his service. Lane testified that defendant continued to interrupt them for about five minutes, singling Lane out and calling her vulgar names, so Lane's group decided to leave.

---

[1] John's full name is not included in the trial court record.

-1-

Kurrle testified that he walked to the bar to pay his bill, and in doing so stood near Castle, who was still seated at the bar next to defendant. Sisung and Lane joined Kurrle at the bar. Lane testified that defendant then started yelling at Kurrle and asked him to fight. According to Castle, however, Kurrle bumped into Castle's chair at the bar and defendant responded by asking if Kurrle was "trying to be a tough guy." Kurrle answered that he was just trying to pay his bill, so the two men introduced themselves, shook hands, and then separated. Defendant testified during post-trial proceedings, however, that while Kurrle was standing at the bar, Sisung, who by now was also standing near the bar, said "I'm going to fight this guy." Castle confirmed that one of the men with Lane stated "let's fight him," while another member of Lane's party said "I'm not fighting."

Lane testified that during this time she walked over to defendant and told him that it was a "very big misunderstanding" and that he "might be a little drunk and paranoid." Castle testified that Lane's tone was sarcastic and that she called defendant a profane name. According to Lane, defendant again called her a vulgar name, so she and Kurrle walked away from defendant, while John and Sisung continued to argue with defendant. Castle testified, however, that the encounter had not escalated beyond a conversation when Sisung abruptly threw a drink in defendant's face. Castle testified that as soon as Sisung threw the drink on defendant, Castle reacted by jumping up from his chair and defendant reacted by throwing a glass at Sisung. Defendant later testified that when Sisung threw the beverage in his face, he believed that the three men were going to beat him up, and so he reacted by throwing the glass at Sisung. The glass hit Lane in the face and the resulting cuts required Lane to receive 16 stitches.

Defendant was charged with felonious assault under MCL 750.82. At trial, the prosecution introduced the bar's surveillance video, which begins while Kurrle is at the bar apparently paying his bill. Lane and Sisung also are standing at the bar, near Kurrle, and in the video, which does not include audio, Lane is gesturing and appears to be talking to defendant, who is at the far end of the bar. Kurrle appears to complete paying the bill, then walks toward Castle where he stops and appears to speak to Castle. Sisung and Lane join Kurrle, standing close to Castle and a few feet from defendant, and appear to be speaking. At this point, another man, presumably John, who apparently had been sitting at the table, gets up and moves past the group, walking away from defendant. Lane's party appears ready to depart, when Sisung picks up a glass from the table and throws a large amount of liquid in defendant's face, then turns away from defendant. Lane then positions herself behind Sisung and appears to "steer" him toward the end of the bar opposite defendant. Both Lane and Sisung have their backs turned to defendant at this point, and are walking away from defendant. Defendant responds by throwing a glass in Sisung's direction, but instead hits Lane, who is between Sisung and defendant.

Defendant was convicted after a bench trial. Lane and Kurrle testified at trial, but neither Sisung nor John was called as a witness. Defense counsel waived his opening statement, cross-examined Lane and Kurrle, and called Castle as a defense witness. Defendant waived his right to testify. At the conclusion of the evidence, the trial court found that defendant was the instigator of the dispute and that defendant throwing the glass was "unjustified." The trial court found that defendant committed an assault with a dangerous weapon because the glass, though not inherently dangerous, was used in a way that was likely to cause serious physical injury or death. The trial court further found that, although defendant intended to throw the glass at Sisung, defendant's intent to commit the assault against Sisung was transferred to Lane. The trial court

rejected defense counsel's request that defendant be found guilty of the lesser offense of aggravated assault.

The trial court sentenced defendant to two years' probation. Defendant thereafter moved for a new trial on the ground that he had been denied the effective assistance of counsel. The trial court held an evidentiary hearing on the motion, known as a *Ginther*[2] hearing. At the hearing, defendant testified that he is a former Marine and suffers from ongoing post-traumatic stress disorder (PTSD) from working as a guard in a camp for Taliban prisoners. Defendant testified that during the argument at the bar, he heard one of the men in Lane's group say that he planned to fight defendant. Defendant testified that when Sisung threw the liquid in his face, he believed that Lane's group was going to beat him up, so he reacted by throwing the glass. Defendant also testified that he told his trial counsel that his PTSD may have caused him to react as he did. Defendant further argued that he never consented to defense counsel's request for the trial court to find him guilty of the lesser charge of aggravated assault.

Steven Scharg, defendant's trial counsel, testified that he was not sure whether defendant told him about having PTSD, but that it would not have impacted his defense strategy at trial because PTSD is not a defense. Scharg testified that he reviewed the surveillance video before trial and believed that the video proved beyond a reasonable doubt that defendant was guilty of felonious assault. Scharg testified that in light of the video, his strategy at trial was to demonstrate that defendant was acting in self-defense by attacking the credibility of the prosecution's witnesses. Scharg further testified that he had requested that the trial court find defendant guilty of the lesser offense of aggravated assault on the basis that defendant had felt intimidated during the events at the bar.

At the conclusion of the *Ginther* hearing, the trial court denied defendant's motion for a new trial, finding that defendant had not been denied the effective assistance of counsel. The trial court rejected defendant's argument that his attorney should have attempted to establish that defendant had been acting in self-defense, finding that argument implausible. The trial court further observed that it had rejected defense counsel's request at trial that defendant be found guilty of aggravated assault, rendering defendant's argument regarding that request irrelevant. Defendant now appeals to this Court, challenging his conviction on the ground that he was denied the effective assistance of counsel at trial.

## II. ANALYSIS

Defendant first argues that defense counsel failed to proffer "any evidence to rebut or cast doubt on any element of the crime charged" and thus denied defendant the effective assistance of counsel under *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984). We disagree.

A defendant in a criminal prosecution is entitled to the assistance of counsel for his or her defense. US Const, Am VI; Const 1963, art 1, § 20; *People v Trakhtenberg*, 493 Mich 38, 51;

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

826 NW2d 136 (2012). Entitlement to counsel means entitlement to the effective assistance of counsel. *People v Meissner*, 294 Mich App 438, 459; 812 NW2d 37 (2011). Whether a defendant was denied the effective assistance of counsel "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews the trial court's findings of fact, if any, for clear error, while reviewing de novo the ultimate constitutional issue arising from the claim of ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016).

In most circumstances, to establish a claim of ineffective assistance of counsel, the defendant must demonstrate that defense counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that there is a reasonable probability that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different. See *Trakhtenberg*, 493 Mich at 51 (restating the test in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984)). Our Supreme Court has observed that most claims of ineffective assistance of counsel are analyzed under the test developed in *Strickland*. *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

But in *Cronic*, the United States Supreme Court identified three situations in which a defendant is entitled to relief on the basis of ineffective assistance of counsel without demonstrating prejudice as required by *Strickland*, those being (1) where there is a complete denial of counsel, (2) where counsel totally fails to subject the prosecution's case to "meaningful adversarial testing," and (3) where counsel is called upon to "render assistance under circumstances where competent counsel very likely could not." *Frazier*, 478 Mich at 243, 243 n 10, citing *Cronic*, 466 US at 659-660. Our Supreme Court in *Frazier* noted that the exceptions identified in *Cronic* are "rare situations," *Frazier*, 478 Mich at 243, and further explained that "[t]he *Cronic* test applies when the attorney's failure is *complete*, while the *Strickland* test applies when counsel failed at specific points of the proceeding." *Frazier*, 478 Mich at 244, citing *Bell v Cone*, 535 US 685, 697; 122 S Ct 1843; 152 L Ed 2d 914 (2002). When a claim of ineffective assistance of counsel does not fall within any of the three situations described in *Cronic*, the *Strickland* test applies. See *Frazier*, 478 Mich at 244.

Defendant argues that this case fits within the second *Cronic* exception because defense counsel at trial failed to subject the prosecution's case to any "meaningful adversarial testing." Defense counsel testified at the *Ginther* hearing that after viewing the surveillance video he concluded that the prosecution had established its case, so his strategy at trial was to attempt to discredit the prosecution's witnesses by demonstrating that Lane and her companions were the instigators of the argument with defendant. Defendant argues on appeal that this strategy was not sound because even if defense counsel succeeded in establishing that Lane's party was responsible for the argument, it would not negate defendant's culpability in injuring Lane. Defendant also argues that defense counsel failed to subject the prosecution's case to meaningful adversarial testing because, during closing argument, defense counsel referred to defendant's actions as "an assault," and asked the trial court to find defendant guilty of a lesser offense. We disagree that the facts of this case fit within the narrow circumstances of the second exception described in *Cronic*.

As noted, the *Cronic* test applies when defense counsel's failure is complete, while the *Strickland* test applies when, as here, defense counsel is alleged to have failed at specific points in the proceedings. *Frazier*, 478 Mich at 244. We further note that in *People v Gioglio*, 490 Mich 868; 802 NW2d 612 (2011), our Supreme Court determined that the defense counsel in that case did not totally fail to submit the prosecution's case to meaningful adversarial testing, even though the defense counsel at trial did not make an opening statement, did not present any witnesses or evidence, and her adversarial testing of the prosecution's case was limited to her cross-examination of the prosecution's witnesses and her closing argument. We similarly conclude that the performance of defense trial counsel in this case, which was similar to that reviewed in *Gioglio*, 490 Mich 868, does not fall within the narrow second exception described in *Cronic*. We therefore apply the test set forth in *Strickland*, see *Frazier*, 478 Mich at 244, and consider whether defense counsel's performance was deficient, falling below an objective standard of reasonableness, and if so, whether there is a reasonable probability that, in the absence of counsel's alleged errors, the outcome of the proceedings would have been different. *Trakhtenberg*, 493 Mich at 51.

To determine whether counsel's performance was deficient in this case, it is necessary to review the nature of the charge against defendant. Defendant was charged with felonious assault, also referred to as assault with a dangerous weapon, MCL 750.82. That statute provides, in pertinent part:

> (1) Except as provided in subsection (2), a person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both. [MCL 750.82.]

The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *People v Bosca*, 310 Mich App 1, 20; 871 NW2d 307 (2015). The first element, an assault, is demonstrated by showing "either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery. . . ." *People v Johnson*, 407 Mich 196, 210; 284 NW2d 718 (1979) (quotation marks and citation omitted). Thus, to demonstrate the element of assault, the prosecution need only prove that defendant either attempted to commit a battery or placed someone in reasonable apprehension of receiving an immediate battery. Here, the prosecution established this element with the video recording showing defendant throwing a glass at Sisung, which could reasonably be determined to be an attempt to commit a battery.

The second element, that the object used in the assault was a dangerous weapon, was also demonstrated. A dangerous weapon is defined by statute as "a pistol or other firearm, or a pneumatic gun, dagger, dirk, razor, stiletto, or knife having a blade over 3 inches in length, or any other dangerous or deadly weapon or instrument" carried with the intent to unlawfully use the weapon against another person. MCL 750.226; see also *Bosca*, 310 Mich App at 21. A dangerous weapon can also be "an instrumentality which, 'although not designed to be a dangerous weapon, is used as a weapon and, when so employed, is dangerous.' " *Id.*, quoting *People v Barkley*, 151 Mich App 234, 238; 390 NW2d 705 (1986). Here, the use of the glass as

a projectile and Lane's consequent injuries evidence the effectiveness of the use of the glass as a weapon.

The third element of felonious assault is the intent to injure or place the victim in reasonable apprehension of an immediate battery. A battery is the "intentional, unconsented and harmful or offensive touching of another, or of something closely connected with the person." *People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004). In this case the parties do not dispute that defendant did not intend to hit Lane when he threw the glass, but rather was aiming at Sisung. The doctrine of transferred intent, however, provides that if the defendant had the requisite intent regarding any person, that intent transfers to an unintended victim. *People v Lovett*, 90 Mich App 169, 171-172; 283 NW2d 357 (1979). Thus, if the prosecution demonstrated that defendant had the requisite intent to commit felonious assault against Sisung, the doctrine of transferred intent enables the prosecution to prove that defendant had the requisite intent toward Lane. See *People v Lawton*, 196 Mich App 341, 351; 492 NW2d 810 (1992).

With regard to the intent element, felonious assault is a specific intent crime. *People v Robinson*, 145 Mich App 562, 564; 378 NW2d 551 (1985). Generally, a specific intent crime requires "a particular criminal intent beyond the act done," while a general intent crime requires only "the intent to perform the physical act itself." *People v Zitka*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket Nos. 338064, 338065), slip op at 4. The trier of fact may infer intent from a defendant's conduct, *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1998), and may also infer intent from all the facts and circumstances, *People v Kissner*, 292 Mich App 526, 534; 808 NW2d 522 (2011). Minimal circumstantial evidence is sufficient to prove a defendant's state of mind. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). Here, there is no dispute that defendant threw a glass at Sisung immediately after Sisung threw a beverage on defendant. From that evidence, a rational trier of fact could conclude that defendant was retaliating and meant either to injure Sisung with the glass, or at least to make Sisung fear that the glass would hit him. This intent, sufficient to support a finding of felonious assault against Sisung, is transferable to support a finding of felonious assault against Lane.

Having reviewed the charge against defendant and the evidence presented by the prosecution at trial, we return to defendant's argument on appeal that he was denied the effective assistance of counsel. Defendant contends that his trial counsel did not adequately raise self-defense in answer to the charge and failed to raise defendant's alleged PTSD in connection with his defense, and that these failures rendered his assistance ineffective. Although we agree that defense counsel did not adequately raise self-defense at trial, we disagree that self-defense was a substantial defense in this case.

An assault may be excused as justified under the doctrine of self-defense if the defendant honestly and reasonably believed that the force used was necessary to protect himself or herself from harm. See *People v Riddle*, 467 Mich 116, 142; 649 NW2d 30 (2002). The amount of force used must be reasonable in the circumstances. See *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). In addition, "[a] defendant's history and psychological makeup may be relevant to explain the reasonableness of a defendant's belief that he or she was in inescapable danger." *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011), remanded on other grounds 493 Mich 916 (2012). Further, "reasonableness depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *Orlewicz*, 293

-6-

Mich App at 102. "A defendant's psychological idiosyncrasies may, at least in theory, be relevant to the reasonableness of the defendant's belief that he or she was in danger. *Id*.

Our Supreme Court has observed that at common law, generally, "[o]ne who is not the aggressor in an encounter is justified in using a reasonable amount of force against his adversary when he reasonably believes (a) that he is in immediate danger of unlawful bodily harm from his adversary and (b) that the use of such force is necessary to avoid this danger." *Dupree*, 486 Mich at 707, quoting 2 LaFave, Substantive Criminal Law (2d ed), §10.4, p 142. However, a person does not act in justifiable self-defense if he or she uses excessive force or if he or she is the initial aggressor. *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013). "A finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified his actions." *Dupree*, 486 Mich at 707, quoting *People v Heflen*, 434 Mich 482, 503; 456 NW2d 10 (1990). Our Supreme Court in *Dupree* further observed:

> It is only just that one who is unlawfully attacked by another, and who has no opportunity to resort to the law for his defense, should be able to take reasonable steps to defend himself from physical harm. When the steps he takes are reasonable, he has a complete defense to such crimes against the person as murder and manslaughter, attempted murder, assault and battery and the aggravated forms of assault and battery, and perhaps other crimes as well. His intentional infliction of (or, if he misses, his attempt to inflict ) physical harm upon the other or his threat to inflict such harm, is said to be justified when he acts in proper self-defense, so that he is not guilty of any crime. [*Dupree*, 486 Mich at 707-708, quoting 2 LaFave, Substantive Criminal Law (2d ed), §10.4(a), p 143-144.]

By enacting the Self-Defense Act (SDA), MCL 780.971 *et seq*., our Legislature codified certain aspects of the common law doctrine of self-defense. *Dupree*, 486 Mich 708. Under the SDA, a person may use non-deadly force in self-defense without a duty to retreat if (1) he or she has not or is not engaged in the commission of a crime, (2) he or she is somewhere he or she has a legal right to be, and (3) he or she "honestly and reasonably believes that the use of that force is necessary to defend" himself or herself from "imminent unlawful use of force by another individual." MCL 780.972(2).

To establish self-defense, a defendant must produce evidence on all elements of the defense. *Guarjardo*, 300 Mich App at 35-36. If the defendant satisfies this initial burden of production, the prosecution then has the burden to disprove self-defense beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 155; 815 NW2d 85 (2012); *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014). The protection afforded by self-defense also may apply to the accidental injury of an unintended victim. "If A in proper self-defense aims at his adversary B but misses B and unintentionally strikes innocent bystander C, he is not liable for C's injury or death unless his conduct, under all of the circumstances (including the need to defend himself) was reckless with regard to C." *People v Jackson*, 390 Mich 621, 624; 212 NW2d 918 (1973), quoting LaFave and Scott, Criminal Law, p 396.

In this case, a review of the record indicates that it is unlikely that a claim of self-defense could be established, regardless of the effectiveness of defendant's representation. On the evening in question, a loud discussion, including the calling of vulgar names, occurred between Lane's party and defendant and lasted for about five minutes. Eventually, Kurrle, Sisung, and Lane got up from their table and moved to the bar, with Kurrle bumping into Castle's chair. Kurrle paid the bill for his party, and Kurrle, Sisung, and Lane then returned to stand between their table and the bar, immediately next to Castle and within a few feet of defendant. During this time, one of the men in Lane's party suggested they fight defendant, while another man in Lane's group stated that he was not going to fight. Lane's companion John then left the table and walked toward the exit, and Kurrle and Lane also began to move toward the exit. As the rest of his group was departing, Sisung threw a drink in defendant's face, then turned away. Defendant responded by throwing a glass at Sisung, but instead hit Lane.

Although defendant was not the initial aggressor, his use of force was not commensurate with Sisung's assault upon him, nor with the surrounding circumstances. Sisung threw a beverage, which while offensive, was unlikely to injure defendant. Sisung then broke off the attack and turned away, and proceeded to walk away from defendant with his back turned. Defendant responded by throwing an object that struck Lane and caused an injury requiring Lane to receive 16 stiches. Although there is evidence that the incident was preceded by someone in Lane's group suggesting that they fight defendant, all members of Lane's group were moving away from defendant at the time that defendant threw the glass, suggesting that the attack on defendant by Sisung had stopped. In this context, it is unlikely that a rational trier of fact would have found defendant's actions to be a reasonable use of force necessary to defend himself.

The right to effective assistance of counsel includes the right to have all substantial defenses investigated, prepared, and presented. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). A substantial defense is one that might have made a difference in the trial's outcome. *Id*. When defense counsel fails to exercise reasonable professional judgment in deciding to forego an investigation relevant to a defense, defense counsel's representation may fall below an objective standard of reasonableness. *Trakhtenberg*, 493 Mich at 53. Thus, trial counsel always possesses a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 52, quoting *Strickland*, 466 US at 690-691.

At the *Ginther* hearing in this case, defense counsel testified that after he reviewed the surveillance video, he determined that the video alone demonstrated defendant's guilt of felonious assault beyond a reasonable doubt. Defense counsel testified that in light of the video, he sought to pursue a theory of self-defense through cross-examination of the prosecution's witnesses to demonstrate they were not credible. Defense counsel testified that he specifically sought to undercut Lane's narrative as to what led to the argument between her, her friends, and defendant. For example, defense counsel questioned Lane and Kurrle about why a bartender or manager was never told that defendant was bothering them and why they did not move to a different table. But because the surveillance video demonstrated that defendant threw the glass and hit Lane, and this would be true regardless of the credibility of Lane and Kurrle, defense counsel's strategy could not possibly succeed in establishing self-defense. Defense counsel also did not attempt to establish whether defendant "honestly and reasonably believe[d] that the use of that force [was] necessary to defend" himself from "imminent unlawful use of force by

-8-

another individual." MCL 780.972(2). Defense counsel also failed to inquire regarding defendant's alleged PTSD, even though a defendant's history and psychological makeup may be relevant to the issue of the reasonableness of a defendant's belief that he is in danger when establishing the elements of self-defense. *Orlewicz*, 293 Mich App at 102.

Nonetheless, we hold that defendant was not denied the effective assistance of counsel. Again, to establish a claim of ineffective assistance of counsel, the defendant must demonstrate not only that defense counsel's performance fell below an objective standard of reasonableness, but also that there is a reasonable probability that, in the absence of counsel's error, the outcome of the proceedings would have been different. See *Trakhtenberg*, 493 Mich at 51. Given the video evidence, there is simply no reasonable probability that defendant could have successfully asserted self-defense, regardless of the quality of his representation. Therefore, counsel's failure to more completely present that defense did not affect the outcome of trial.

We also reject defendant's argument that defense counsel was ineffective because he asked the trial court to find defendant guilty of the lesser offense of aggravated assault. The trial court declined to find defendant guilty of that lesser offense, rendering this argument irrelevant.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Deborah A. Servitto
/s/ Michael F. Gadola