*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IN RE REC, III

UNPUBLISHED
May 25, 2023

No. 362011
St. Clair Circuit Court
LC No. 20-000773-PP

Before: LETICA, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right from his judgment of contempt, which resulted from three violations of a personal protection order (PPO). Defendant was sentenced to 93 days in jail for each violation, to run concurrently. For the reasons set forth in this opinion, we affirm defendant's convictions and sentences.

## I. BACKGROUND

This appeal arises from a PPO issued in response to LH's allegations about defendant's acts of domestic violence directed toward her. The trial court issued an ex parte PPO on June 8, 2020, prohibiting, in part, defendant from communicating with LH and going to her residence. LH alleged defendant violated the PPO three times. Defendant did not appear for his first PPO violation hearing, and was later arrested and brought to a subsequent hearing 20 months later. Defendant's attorney asserted that he was not prepared to proceed at that PPO violation hearing because he had not talked with defendant in over a year, and had just learned about the violations one week prior. The trial court granted a three-day adjournment.

At the subsequent PPO violation hearing, LH testified defendant violated the PPO by texting and calling her on August 10, 2020, and by visiting her residence on August 11, 2020, and August 12, 2020. Defendant admitted he did each of those things, but defense counsel argued defendant did not receive proper service for the PPO, and therefore, the PPO was not valid. The trial court ruled the 14-day window to challenge the service of the PPO had already expired, and directed defense counsel to focus his arguments on whether defendant violated the PPO. Subsequently, the trial court held defendant had violated the PPO three times, and sentenced him to 93 days in jail for each violation, all to run concurrently. This appeal ensued.

## II. ANALYSIS

-1-

In his appeal,[1] defendant makes two assertions. First, defendant argues that despite precedent to the contrary, this Court should recognize the right to a jury trial for criminal contempt proceedings involving PPO violations. Second, he argues that he should be afforded a new hearing because his counsel was ineffective. We conclude that neither claim is persuasive and accordingly, we affirm.

We begin with an examination of defendant's first argument that he was entitled to a jury trial for the criminal contempt proceedings involving his PPO violations. We note that defendant did not raise this issue in the trial court. Accordingly, this argument is an unpreserved constitutional claim which we review for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). Under the plain-error rule, defendant bears the burden to prove: 1) an error occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected his substantial rights, meaning it affected the outcome of the proceedings. *Id.* at 763. If defendant satisfies those three requirements, reversal is warranted only when the plain error "resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 763-764 (quotation marks, citation, and alteration omitted).

MCR 3.708(H)(1) states "[t]here is no right to a jury trial," for contempt proceedings for PPO violations, a fact defendant readily admits. This Court made clear in *Brandt v Brandt*, 250 Mich App 68, 72; 645 NW2d 327 (2002) that: "MCR 3.708(H)(1) specifically explains that a respondent in a contempt proceeding is not entitled to a jury trial." Defendant asserts that despite this express prohibition of jury trials in contempt proceedings, this Court should recognize the right to a jury trial for criminal contempt proceedings involving PPO violations under MCR 7.215(J)(2)-(3). However, MCR 7.215(J) concerns conflicts in decisions issued from this Court.

More specifically, defendant argues that this Court should hold the right to a jury trial attaches to criminal contempt proceedings because the punishment for criminal contempt is "virtually identical" to the punishment for certain misdemeanors under the Penal Code, for which defendants are guaranteed the right to a jury trial. We agree with defendant that the Michigan Constitution guarantees the right to a jury trial for both petty and serious violations of criminal statutes, *People v Antkoviak*, 242 Mich App 424, 481-482; 619 NW2d 18 (2000). However, this same guarantee does not extend to criminal contempt proceedings as criminal contempt proceedings are exempted from the right to a jury trial that attaches to proceedings concerning criminal statute violations. See Const 1963, art I, § 20 (guaranteeing the right to a jury trial for proceedings concerning criminal statute violations); and as previously stated, MCR 3.708(H)(1); *Brandt*, 250 Mich App at 72. Clearly, relative to a defendant's right to a trial by jury, criminal contempt actions involving PPO violations are treated differently than violations of criminal statutes in Michigan. As such, defendant's argument that he was entitled to a jury trial because defendants accused of misdemeanors are entitled to jury trials is unpersuasive.

Defendant also argues that the Sixth Amendment to the United States Constitution should guarantee him a jury trial for contempt proceedings. However, defendant admits in his brief on appeal that the Sixth Amendment guarantees a jury trial for criminal contempt proceedings *only* if

---

[1] The prosecution did not file any responsive pleadings.

the actual punishment imposed is greater than six months. *Bloom v Illinois*, 391 US 194, 197-199; 88 S Ct 1477; 20 L Ed 2d 522 (1968); see also US Const, Am VI. Here, defendant was only sentenced to 93 days in jail. Accordingly, defendant was not entitled to a jury trial under the Sixth Amendment. *Id*.

Defendant's second argument is that he was denied the effective assistance of counsel because defense counsel was unprepared for the hearing and demonstrated a deficiency of legal knowledge. "A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*. Clear error exists where the reviewing court is left with a "definite and firm conviction" that the lower court made a mistake. *Id*.

A criminal defendant has the right to a fair trial which includes the right to effective assistance of counsel. *Id*. "Trial counsel is ineffective when counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. (quotation marks and citation omitted). "Trial counsel's performance is presumed to be effective, and defendant has the heavy burden of proving otherwise." *Id*. There are three situations when an attorney's performance is so deficient that prejudice is presumed: (1) when the defendant is completely denied counsel at a "critical stage," (2) when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) when "counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Bell v Cone*, 535 US 685, 696; 122 S Ct 1843; 152 L Ed 2d 914 (2002) (quoting *US v Cronic*, 466 US 648, 659-662; 104 S Ct 2039; 80 L Ed 2d 657 (1984)). Defendant claims defense counsel's performance fell under the second two *Cronic* prongs, and should, therefore, be presumed to have prejudiced defendant.

Only in rare situations is an attorney's performance so deficient that prejudice is presumed. *People v Kammeraad*, 307 Mich App 98, 125; 858 NW2d 490 (2014). In order to presume prejudice based on an attorney's failure to test the prosecution's case, "the attorney's failure must be complete," meaning, counsel must "entirely fail" to "subject the prosecution's case to meaningful adversarial testing." *Bell*, 535 US at 697. *Cronic* is applicable where counsel fails to oppose the prosecution throughout the entire proceeding. *Id*. "The *Cronic* test applies when the attorney's failure is complete, while the *Strickland* test[, *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984),] applies when counsel failed at specific points of the proceeding." *People v Frazier*, 478 Mich 231, 244; 733 NW2d 713 (2007). If defense counsel consults and advises the defendant, and acts according to the defendant's wishes, defense counsel's failure is not complete, and prejudice will not be presumed. *Id*. at 245.

Our review of the record leads us to conclude that defense counsel's performance does not fall under the second *Cronic* prong because defense counsel did not "entirely fail" to subject the prosecution's case to meaningful adversarial testing. See *Bell*, 535 US at 697 (holding an attorney's performance only falls under the second *Cronic* prong when the attorney completely fails to subject the prosecution's case to meaningful adversarial testing). Defense counsel met with defendant before the PPO violation hearing, advised defendant, cross-examined LH, and conducted defendant's direct examination, and made clear he understood the evidence and the

arguments available to defendant. Additionally, there is no record evidence from which we could glean that defense counsel acted against defendant's wishes. Therefore, defense counsel's failures, if any, were not complete under the second *Cronic* prong. *Frazier*, 478 Mich at 245 (holding defense counsel's alleged failures are not "complete" where defense counsel consults and advises defendant, and acts in accordance to defendant's wishes).

Defendant also claims defense counsel was "called upon to render assistance under circumstances where competent counsel very likely could not." *Bell*, 535 US at 696. Defendant claims that, since defense counsel was not ready to proceed with the hearing on May 3, 2022, he was not prepared to proceed with the May 6, 2022 hearing, and therefore, was called on to render services where competent counsel likely could not. This argument has no support in the record. As previously stated, contrary to defendant's assertions, the record makes clear that defense counsel knew the factual underpinnings of the case and made his best arguments on behalf of defendant. We also note that defendant does not point to any specific failure by counsel or any record evidence that would illustrate counsel's lack of preparedness. Therefore, because defendant's argument is based on inaccurate factual allegations, this argument should be dismissed for lack of support. See *People v Solloway*, 316 Mich App 174, 189; 891 NW2d 255 (2016) (holding defendants have the burden of establishing the factual predicate underlying a claim of ineffective assistance of counsel).

Defendant also asserts that his counsel was deficient under the *Strickland* test. Under *Strickland*, "[i]n order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), quoting *Strickland*, 466 US at 669. "If counsel's strategy is reasonable, then his or her performance was not deficient." *Isrow*, 339 Mich App at 532 (citation omitted). When evaluating an ineffective assistance of counsel claim, there is a "strong presumption that trial counsel's decision-making is the result of sound trial strategy." *Id*. "A deficiency prejudices a defendant when there is a reasonable probability that but for trial counsel's errors, the verdict would have been different." *Id*.

Defendant claims defense counsel's conduct was ineffective because defense counsel (1) failed to meet with defendant, (2) was not fully prepared for the hearing, (3) failed to subpoena witnesses or phone records, (4) was unaware of the prosecution's plan to introduce text messages, (5) failed to introduce evidence he marked as defense exhibits, (6) was not fully prepared for cross-examination, (7) did not argue the issue being addressed at the hearing, (8) improperly had defendant testify, and (9) demonstrated a lack of knowledge regarding the right to remain silent.

Again, the record reveals that none of the allegations set forth by defendant are true. At the PPO violation hearing on May 6, 2022, defense counsel showed his preparedness for the hearing by objecting to the admission of the text messages, attempting to probe LH's motivation to file for the PPO by bringing up specific financial incentives, attempting to dispute the cut-off for challenging the PPO, demonstrating knowledge of LH's communication with defendant that could be interpreted as her having invited defendant onto her property on August 12, 2020, attempting to establish defendant's tenancy interest in the property, challenging the service of the PPO, advising defendant not to make any admissions that could be used against him in the other criminal proceedings, and carefully leading defendant through his direct examination. This all

-4-

demonstrates, contrary to defendant's claim, that defense counsel was prepared at the May 6, 2022 PPO violation hearing. Since defendant has failed to show specific instances where defense counsel was unprepared, and consequently performed deficiently, this claim is rejected. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004) (holding a defendant cannot simply announce a position, and then leave it for this Court to "discover and rationalize a basis for the claim.").

Defendant also claims defense counsel failed to subpoena witnesses, but defendant does not list any witnesses that should have been subpoenaed. Because defendant has not offered any proof that there was useful information defense counsel could have elicited from other witnesses, this claim is meritless. See *People v Haynes*, 338 Mich App 392, 430; 980 NW2d 66 (2021) (holding the defendant has the burden of proof to establish that the testimony defense counsel allegedly failed to elicit would have benefitted the defendant). Additionally, defendant asserts defense counsel failed to offer exhibits defense counsel had prepared and subpoena phone records, but defendant has not offered any proof that this occurred, or that the missing evidence would have helped him. Accordingly, we reject this claim. See *Isrow*, 339 Mich App at 532 (holding there is a strong presumption trial counsel's decisions are the product of sound trial strategy); see also *Solloway*, 316 Mich App at 189 (holding the defendants have the burden of establishing the factual predicate underlying a claim of ineffective assistance of counsel).

Likewise, defendant's claims that defense counsel was not fully prepared for cross-examination and was unaware that the prosecution was going to offer text messages are unsupported by the record, and should be disregarded under the same principles cited above from *Isrow* and *Harris*. In fact, the record demonstrates that defense counsel conducted a thorough cross-examination of LH, which demonstrated defense counsel's knowledge of specific financial incentives LH had to file for the PPO, and trial counsel's knowledge of text messages between LH and defendant that could have been interpreted as LH inviting defendant onto her property on August 12, 2020. Accordingly, defendant is not entitled to relief on this claim.

Defendant's final claim under this issue is that defense counsel's performance was deficient because he did not understand how the right against self-incrimination worked, and consequently, improperly had defendant testify. Defense counsel informed defendant that his testimony in this case could be used against him in his other proceedings before defendant began to testify. Additionally, the trial court explained to defendant how the Fifth Amendment worked, and advised defendant on his rights before he began to testify. As a result, defendant was well-informed of his Fifth Amendment rights prior to testifying. When defense counsel sought to have defendant invoke his privilege while defendant was testifying, the trial court offered defense counsel the opportunity to withdraw all of defendant's testimony, and invoke his Fifth Amendment privilege. Even if we were to conclude that defense counsel did not initially understand the nuances of his client's Fifth Amendment's rights, those misunderstandings of the right to remain silent did not make his performance deficient because defense counsel's decision to keep defendant's testimony and proceed with cross-examination was based on his corrected understanding of the Fifth Amendment. Since defense counsel's decision to keep defendant's testimony and proceed with cross-examination was made after he properly understood the Fifth Amendment privilege, defense counsel's decision did not constitute deficient performance based on a misunderstanding of the Fifth Amendment privilege.

However, even if we were to presume defense counsel's performance was deficient, defendant has failed to establish that, "but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. Importantly, defendant admitted he texted LH on August 10, 2020, and went to her residence on August 11, 2020, and on August 12, 2020. The trial judge made it clear that the only issue at the hearing was whether defendant violated the PPO by contacting LH. Defendant admitted that he contacted LH and thus the trial court found defendant violated the PPO by communicating with LH and going to her residence. Therefore, the outcome was not a result of defense counsel's deficient performance, but of defendant's own admissions. Accordingly, defendant is not entitled to relief.

Affirmed.

/s/ Stephen L. Borrello
/s/ Michael J. Riordan