# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CARLOS MARQUIS LOVE, JR.,

        Defendant-Appellant.

UNPUBLISHED
February 7, 2017

Nos. 324992; 329217
Wayne Circuit Court
LC No. 14-002709-FC

AFTER REMAND

Before: GADOLA, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

This case returns to us after remand for a *Ginther*[1] hearing. In our prior opinion we reversed the trial court's order granting a new trial based on its conclusion that trial counsels' actions during trial effectively amounted to a complete denial of counsel at a critical stage constituting structural error under *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984).[2] The basis for its ruling was the fact that defendant's primary trial counsel, without notice to the court, left mid-trial in order to try a case in another state, thereby leaving secondary counsel, whose practice was primarily contract negotiation and who had minimal trial experience and no experience with capital cases, in charge of the defense.

We concluded that the trial court incorrectly applied *Cronic* because defendant was represented throughout the trial. *People v Love*, unpublished opinion per curiam of the Court of Appeals issued July 21, 2016 (Docket Nos. 324992, 325107, & 329217), p 7-8. Defendant also argued that he was entitled to a new trial pursuant to *Ginther* and *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). However, as we noted in our prior opinion:

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Love*, unpublished opinion per curiam of the Court of Appeals issued July 21, 2016 (Docket Nos. 324992, 325107, & 329217), p 25.

Given the trial court's concern and understandable ire regarding Schulman's unexpected mid-trial departure, these more specific *Strickland* concerns were either not addressed or received only cursory treatment at the hearing. . . . [W]e remand for a *Ginther* hearing to develop a factual record and to determine whether Schulman and/or Palmore-Bryant provided ineffective assistance of counsel. On remand, the trial court shall take additional testimony and shall make findings as to whether counsels' performance was deficient, and, if so, whether it was so prejudicial as to merit a new trial. [*Love*, unpub op at 8.]

On remand, the trial court conducted an extensive evidentiary hearing and at its conclusion ruled that defendant was denied the effective assistance of counsel. We affirm. As our prior opinion sets forth, this case concerned multiple acts of criminal sexual conduct perpetrated upon the victim by several men in the bedroom of an apartment in which a party was being held. It is uncontested that defendant was at the party, but he denied participating in the assaults. His trial turned largely on the issue of identification. The assaults occurred in a dark room and, as noted, multiple assailants were involved. Within hours of the crime, the victim was shown a photographic line-up that included defendant's picture, and she did not identify him as a perpetrator. Later, after looking at photos on Facebook, she concluded that he was among the perpetrators and thereafter identified him at a corporeal line-up.

At the *Ginther* hearing, defense presented testimony from Darrell Gleese, who was on defendant's witness list, but was not called to testify at trial. At the hearing, Gleese testified that he was at the party, that he saw defendant there, and that defendant was intoxicated and asleep in the living room during the time the assaults occurred. He stated that he saw four or five men go into the bedroom where the victim was but defendant was not among them. He also testified that prior to trial he had spoken with attorney Schulman and advised him of the content of his potential testimony.

Attorney Palmore-Bryant testified that prior to trial she was aware that Gleese was an important witness for the defense and that she had spoken with him after the preliminary examination where she learned of his recollection of the party and obtained his phone number but did not request his address. She placed Gleese on the defense witness list,[3] spoke with him later by phone, and fully advised Schulman of Gleese's expected testimony. When asked how she planned to subpoena Gleese without his address, she stated that she did not know how to do so and that Schulman told her that "because [Palmore-Bryant was] not familiar with the court procedures, that he would take care of those type of administrative things." She testified that she thought Schulman had subpoenaed Gleese. By contrast, Schulman testified that he was not informed by Palmore-Bryant of Gleese's likely testimony and that he never issued a subpoena for him. The trial record revealed that Schulman had advised the court that the prosecutor would be producing the four people on defendant's witness list. Palmore-Bryant also testified regarding

---

[3] The defense witness list contained four names of which Gleese was the only one not listed on the prosecution's witness list.

Schulman's mid-trial departure stating that she expected him back in time to question the complainant and police officers and that she was not prepared to do so.

The trial court set forth the following findings and conclusions in its ruling:

The Court has now heard the second [*Ginther*] Hearing concerning Mr. Love's conviction in regard to this case. And, of course, the Court's guided by *Strickland v Washington*[,] 466 US 668, a 1984 case. And also the case of *People v Frazier*[,] 478 Mich 231[, a] 2007 case which indicate that counsel's performance in order to be held ineffective fell below an objective standard of reasonableness and that it was reasonably probable that had the standard been met by defense counsel that there would have been a different result in regard to that particular matter.

\* \* \*

Now, in this particular case, Mr. Darrell Gleese's name was listed on the defendant's witness list. A minimal amount of investigation was conducted by Ms. Palmore-Bryant which purportedly included her taking a statement from Mr. Gleese. It wasn't until I had actually asked Ms. Palmore-Bryant what the nature of this general statement that she made that his testimony was going to be favorable to the defense, that any explanation as to how that favorable testimony had it been given at the trial would have been of benefit to Mr. Love. And then she said that he had said to her that Mr. Love was asleep. That, to my knowledge, had never been brought out before. It may have, but I didn't remember hearing it. So how many witnesses did Defendant Love have at the time of trial? Purportedly listed four, three of which were the prosecution's witnesses and one being his, that being Mr. Gleese.

How important, therefore, would it have been for an attorney, regardless of whether or not it's a criminal case, a civil case, a divorce case, every attorney is obligated to file a witness list. Every attorney is obligated to render as effective assistance to his or her client as humanly possible.

With Ms. Palmore-Bryant knowing that Mr. Gleese's testimony would be helpful to the defense of Mr. Love, explaining that he was asleep at the time of these terrible acts would have been of crucial importance to rendering an effective defense on his behalf.

Well, could Mr. Gleese's testimony have been believed? There was nothing to impugn his credibility. There was no history of previous criminal behavior on his part. The only attack on his credibility conceivably would have been that his testimony may have been inconsistent with the testimony of the prosecution's witnesses presented during the course of the trial. But there was nothing to impugn him directly.

So what should an attorney have done under those circumstances, knowing full well that this is a crucial witness? That attorney should have

-3-

obtained any -- every conceivable way in which to contact that witness for trial, and given him even a subpoena at that particular juncture, gotten his address, telephone number, driver's license number, date of birth, any reasonable contacts that could be utilized to communicate with that individual. Take a statement from him, a written statement from that person that he would sign so that the testimony would not be changed by that witness at the time of trial. And if that witness attempted to change that testimony, change his or her story, then the statement could be used to impeach that person's credibility and then be treated as a hostile witness.

Ms. Palmore-Bryant did none of that. She just spoke to him and then allowed him to go upon his merry way knowing full well that that was the only witness that was going to be of help to her then client Mr. Love.

Ms. Palmore-Bryant's purported reliance of Mr. Schulman then following up with Mr. Gleese and preparation of trial is misplaced. How could Mr. Schulman prepare for trial if he was never given any information concerning the specific nature of Mr. Gleese's testimony. And not provided with contact information so that Mr. Gleese could be presented at the time of trial.

Mr. Schulman was the one who filed the defendant's witness list, however. When an attorney files that witness list he or she must know what that witness is going to say at the time of trial and make darn well sure that that attorney has the contact information to make sure that that witness is going to be provided at the time of trial. Witness lists actually are supposed to include the address of the witness, not their phone number but their address as well, that's the reason for it. That wasn't on the witness list.

\* \* \*

Both of them admitted on the record that their behavior fell below a reasonable standard concerning their profession in representing Mr. Love. Like I said, [such admissions are] frequently engaged in by other defense counsel in this building [at *Ginther* hearings]. But there was some substance, however, to the statements that they made in that neither one of them followed up with Mr. Gleese to make sure that he was going to testify at the time of trial. So there was a specific act on their part that fell below a reasonable standard of professionalism in regard to both attorneys.

\* \* \*

How could the defense attorneys have assumed that the prosecution had obtained statements from everybody including Mr. Gleese? That's fanciful, especially in light of the fact that his contact information had never been provided to the prosecution.

Both attorneys indicated on the record that Mr. Gleese's testimony would have been of benefit to Mr. Love if for no other reason than to call into question

-4-

the credibility of the prosecution's witnesses as to whether or not Mr. Love had participated in the nefarious acts that ultimately occurred.

* * *

So Mr. Gleese's testimony was a crucial piece of evidence that the defense should have presented at the time of trial. And because of not having contact information concerning him, they were incapable of providing him and both attorneys indicated that his testimony would have been necessary, reliable, because there was no way to impeach his testimony and of benefit to Mr. Love.

* * *

Now, if Mr. Gleese had given testimony in regard to this case, would the results of these proceedings have been different? There is a reasonable probability of that because he would have called into question the testimony of the prosecution's witnesses and would have rendered Mr. Love incapability [sic] of engaging in the behavior with which he was accused if he was sound asleep on the couch, especially due to intoxication.

Of course, there's other questions that could be raised if he took the stand concerning when specifically the nefarious acts had taken place, when the witness had seen that Mr. Love was sound asleep on the couch, etcetera, etcetera. So timing would have been important at the time that the trial took place concerning whether or not Mr. Gleese's testimony was going to be believed or not. But his testimony as given to the Court clearly contradicts the testimony of the prosecution's witnesses and give to Mr. Love a defense whereas before when the case was actually tried, he was abandoned by both lawyers.

The defense of both of these attorneys was abysmal, falling far below the standard of any attorney who would be representing a criminal defendant such as a case as this. And there being a reasonable probability that the results of the proceeding would have been different.

The determination whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. *People v Cooper*, 309 Mich App 74, 79; 867 NW2d 452 (2015). The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Trakhtenberg*, 493 Mich at 47. Regard should be given to the trial court's opportunity to assess the credibility of the witnesses who appeared before it. *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859, amended 481 Mich 1201 (2008), MCR 2.613(C), and MCR 6.001(D). A finding is clearly erroneous when, although there is evidence to support it, this Court, on the whole record, is left with a definite and firm conviction that a mistake was made. *Dendel*, 481 Mich at 130. Failure to call a witness can constitute ineffective assistance of counsel if it deprives the defendant of a substantial defense. *People v Hoyt*, 185 Mich App 531, 537-538;

462 NW2d 793 (1990). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (internal quotations and citation omitted).

After a review of the trial record and the hearing transcript, we are not left with a definite and firm conviction that the trial court's findings of fact were in error. While this Court will not second guess an attorney's trial strategy, *People v Eliason*, 300 Mich App 293, 300; 833 NW2d 357 (2013), modified on other grounds *People v Carp*, 496 Mich 440, 526-528; 852 NW2d 801 (2014), it is clear that the failure to call Gleese was grounded in error and miscommunication, not strategic considerations, and that it deprived defendant of a substantial defense. At the hearing, neither of the defense attorneys could offer any basis in trial strategy for failing to call Gleese as a witness, and the prosecution has not articulated one. The trial court's conclusion that this error, along with the others mentioned in its full opinion, fell below an objective standard of reasonable professional norms was not clearly erroneous. We similarly conclude that its judgment that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different was not clearly erroneous. The trial court was present throughout the trial and had a "special opportunity . . . to judge the credibility of the witnesses" and the other evidence. See MCR 2.612(C) and MCR 6.001(D). Gleese's testimony was clearly exculpatory, amounting to alibi testimony, and no other witness provided testimony as to which Gleese's testimony would have been cumulative.

Affirmed.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro