*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL DALE BURNS,

        Defendant-Appellant.

UNPUBLISHED
February 14, 2025
10:00 AM

No. 362742
Lapeer Circuit Court
LC No. 2020-013799-FC

Before: BOONSTRA, P.J., and M. J. KELLY and MALDONADO, JJ.

PER CURIAM.

Defendant, Michael Burns, appeals as of right his jury-trial convictions of two counts of operating a vehicle while intoxicated causing death (OWI causing death), MCL 257.625(4)(a), and two counts of reckless driving causing death, MCL 257.626(4). We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

On August 25, 2019, Burns was driving a sports utility vehicle (SUV) north on M-24 when he crashed into a motorcycle driven by Brian Stamp. The force of the impact hurled Stamp and his passenger, Rhonda Mahaffy, from the motorcycle. They both died from multiple blunt force injuries.

At trial, a friend of Burns's testified that he had met Burns earlier in the day and that Burns did not appear to be under the influence of drugs or alcohol. However, witnesses at the scene described Burns as muttering and speaking incoherently. One heard him state that he had not meant for "this to happen" and that he had lost control of the SUV. He also claimed that he had a "broken" sway bar. Additionally, when Burns spoke with a police officer after the crash, he stated that Stamp's motorcycle "came into [my] lane." Because his speech was slurred, the officer believed that he was intoxicated. However, owing to the fact that Burns was injured, no field sobriety tests were performed. Instead, Burns was transported to the hospital. He told the paramedic that he had been having problems with his sway bar and that his wife had told him that he should probably have the SUV towed. At the hospital, the police officer obtained a warrant for

-1-

a blood draw. Burns tested positive for citalopram, escitalopram, buprenorphine, morphine, norbuprenorphine, and benzoylecgonine.

At trial, eyewitnesses recounted that moments before the collision, Burns almost rear-ended a different vehicle at a traffic signal. He was also swerving back and forth across the lanes of traffic and had crossed into the southbound lane of traffic at least once before the crash. The eyewitnesses explained that Burns then veered smoothly from the northbound lane into the southbound lane and smashed into Stamp's motorcycle. After the collision, the SUV spun out of control. One witness believed that the SUV's front wheel hub completely disconnected. The impact of the vehicles left gouges in the southbound lane.

Detective Sergeant Jason Parks was qualified without objection as an expert in the field of accident reconstruction. He opined that

> based upon damage profile, roadway evidence from area of impact to post-impact to final rest, it's very clear that the [SUV] traveling northbound went across out of the northbound lane, he was traveling northwest, crossed over a small section of the turn lane and clearly went into the southbound lane a considerable distance and it actually pulled in front of the path of a southbound motorcycle and the collision occurred there.

Parks further opined that, based upon his inspection of the SUV and the roadway, there was no indication that the SUV had a mechanical failure. A defense expert, however, determined that the SUV had a broken ball joint on the front passenger side. The defense expert opined that the ball joint "disconnected itself or came apart." The expert explained that as it was becoming disconnected, the lower ball joint was "stationary but wobbling," which would have made it difficult for Burns to control the vehicle. And, when it completely disconnected, Burns "lost all control and he veered into oncoming traffic." The defense expert added that the suspension on the front passenger side's failure caused the SUV to "move quickly to the left," i.e. toward the centerline.

Following a jury trial, Burns was convicted as charged. Burns moved for postjudgment relief in the trial court, contending in part that his sentence was invalid because it violated double-jeopardy principles. The trial court denied the motion. This appeal follows.

## II. EXPERT TESTIMONY

### A. STANDARD OF REVIEW

Burns asserts the trial court erred by admitting Parks as a crash site reconstruction expert and by admitting Parks's testimony regarding the mechanics of the SUV. Burns also contends his trial lawyer was ineffective for failing to move to exclude Parks's expert testimony. Because Burns did not object to Parks's qualifications to testify as an expert in crash site reconstruction, this argument is unpreserved. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). As a result, our review is for plain error affecting his substantial rights. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Burns, however, objected to Parks's testimony regarding whether the SUV experience a mechanical failure. Accordingly, that question is preserved. See *Aldrich*, 246 Mich App at 113. "This Court reviews de novo whether the trial

court properly interpreted and applied the rules of evidence." *People v McFarlane*, 325 Mich App 507, 517; 926 NW2d 339 (2018). Finally, because no evidentiary hearing has been conducted on Burns's claim of ineffective assistance, our review of that claim "is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

## B. ANALYSIS

Burns first contends that the trial court plainly erred by admitting Parks's expert testimony as a crash site reconstructionist under MRE 702 because Parks did not have a certification or a sufficient education. We disagree. MRE 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"A court considering whether to admit expert testimony under MRE 702 acts as a gatekeeper and has a fundamental duty to ensure that the proffered expert testimony is both relevant and reliable." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012). "The overarching goal is to make certain that an expert employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. (quotation marks, alteration, and citation omitted). "Because there are many different kinds of experts and expertise, this inquiry is, by necessity, a flexible one . . . ." *Id*.

Burns argues that Parks should not have been admitted as an expert for two reasons. First, Burns highlights Parks's testimony that there is no "certification process at all" to become a reconstruction specialist. Second, he directs this Court to Parks's testimony that he had not taken any "standalone" physics courses. However, MRE 702 does not require that an expert receive a "certification" or to attend "standalone" courses related to a particular subject in order to be qualified as an expert. Rather, an expert may be qualified based upon his or her "knowledge, skill, experience, training, or education . . . ." MRE 702.

Here, Parks testified that he had worked for the Lapeer County Sheriff's Office for 26 years and was specially trained in crash site reconstruction. His experience included over 500 hours of training, including at-scene courses, reconstruction courses, and technical courses explaining the laws of physics and how to analyze speed. Moreover, Parks annually conducted between 20 to 25 reconstructions and, over the course of his career, he had conducted hundreds of reconstructions. Parks's education included a high school diploma, an associate's degree in criminal justice, and graduation from the police academy. He explained that traffic crash investigation courses were

part of his training at the police academy. Further, Parks was trained in physics and had taken an 80-hour reconstruction course and an 80-hour technical course. These courses were "based off the blueprint the Michigan State Police did for their traffic crash reconstructionists." Accordingly, given the record in this case, it is clear that, notwithstanding his lack of a "certification" or the completion of "standalone" physics courses, Parks had the knowledge, skill, experience, training, and education to provide an opinion regarding crash site reconstruction.

Inasmuch as there was no error in the admission of Parks's testimony under MRE 702, any objection by Burns's lawyer would have been futile. A defense lawyer does not provide ineffective assistance to a defendant by failing to raise a futile or meritless objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). As a result, Burns cannot show that his lawyer provided ineffective assistance by failing to object. Moreover, multiple eyewitnesses testified that Burns was driving erratically and that he crashed into Stamp's motorcycle after he veered into Stamp's lane of travel. Thus, Parks's expert opinion that the crash was caused by Burns driving into Stamp's lane of travel is cumulative to other testimony. Accordingly, even if Burns could show that his lawyer provided deficient assistance by failing to object, Burns cannot show that there is a reasonable probability that, but for his lawyer's allegedly deficient performance, the outcome of the trial would have been different. See *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

Next, Burns asserts that the trial court abused its discretion by admitting Parks's testimony regarding whether the crash was caused by a mechanical failure. We disagree. Although the prosecution did not move to qualify Parks as a mechanical expert, he provided such testimony when explaining his crash site reconstruction. Parks explained that he had inspected the SUV's tires to check for mechanical failure. He observed that the front right tire was separated from the SUV and that no other tires, including the front driver's side tire, were damaged. When the prosecution asked Parks whether there was any evidence suggesting that mechanical failure caused the collision, Burns's lawyer objected because Parks was not qualified as an expert mechanic. The trial court sustained the objection but allowed the prosecution to lay a foundation for such testimony. Thereafter, Parks explained that the front left tire appeared to function properly because it rolled, "stayed in the track appropriately," and nothing was disconnected or loose. Moreover, Parks explained that there was no evidence of mechanical failure "on the roadway." Based upon the record, it is clear that Parks's observations of the SUV's tires and whether there were tire marks on the roadway was part of his investigation of the crash site. Thus, it was an admissible part of his expert testimony in crash site reconstruction.

Parks inspected the SUV a second time. He stated that there was nothing broken "behind" the driver's front tire and that it was properly oriented. Burns's lawyer objected to any testimony "other than the fact that [the] tire appeared to be in working order and was aligned properly." The prosecution stated it would "narrow it down to ask if there was anything on the driver's side that indicated a mechanical failure." The trial court agreed, stating "part of his reconstruction technology training is to look at the [SUV] to see if anything mechanical that's obvious that caused the collision that took place." The trial court allowed testimony regarding the driver's side of the vehicle. The prosecution asked, "in your opinion, did anything on the left side of the [SUV] cause that vehicle to be involved in that crash that afternoon?" Parks answered that "[t]here was no indication of mechanical failure[.]" Parks's opinion as to the mechanics of the SUV and cause of the accident was admissible because it was part of his duties to inspect the SUV to determine how

the crash occurred. The testimony concerning the SUV's mechanics stemmed from his observations and were not outside the scope of his knowledge, skill, experience, training, or education, as a crash site reconstruction expert.[1]

### III. DOUBLE JEOPARDY

### A. STANDARD OF REVIEW

Burns next argues that his convictions of two counts of OWI causing death and reckless driving causing death violates the prohibition against double jeopardy. "A double jeopardy challenge presents a question of constitutional law reviewed de novo on appeal." *People v Ackah-Essien*, 311 Mich App 13, 30; 874 NW2d 172 (2015).

### B. ANALYSIS

In *People v Fredell*, 340 Mich App 221, 243; 985 NW2d 837 (2022), reversed in part on other grounds ___ Mich ___ (2024) (Docket No. 164098),[2] this Court held that it does not violate double jeopardy for a defendant to be convicted of both reckless driving causing death and OWI causing death. The *Fredell* Court explained:

> Reckless driving causing death requires the prosecution to prove that a defendant operated a vehicle "in willful or wanton disregard for the safety of persons or property." MCL 257.626(2) and (4). OWI causing death does not require as an element that the prosecution prove this mental state[.] OWI causing death . . . does not even require proof of mere ordinary negligence. Furthermore, OWI causing death requires proof related to the defendant's intoxication or visible impairment, MCL 257.625(1), (3), and (4), while reckless driving causing death contains no such elements, MCL 257.626(2) and (4). Because each of these offenses contains an element that the other does not, convicting defendant of both offenses did not violate double-jeopardy protections. [*Id*. 242-243 (alterations and some citations omitted).

---

[1] Even if the admission of such testimony was an abuse of discretion, a different outcome would not have resulted. The testimony of multiple eyewitnesses, as well as the evidence gathered during the crash site reconstruction, established that Burns caused the collision by driving his SUV into Stamp's lane of travel.

[2] Specifically, the Supreme Court reversed the *Fredell* Court's determination that a defendant's conviction of involuntary manslaughter premised upon a defendant's gross negligence and reckless driving causing death did not violate double jeopardy. *Fredell*, ___ Mich at ___; slip op at 1-2. The Supreme Court, however, left intact the *Fredell* Court's determination that it did not violate double jeopardy for a defendant to be convicted of OWI causing death and reckless driving causing death.

Based upon the foregoing, there is no merit to Burns's claim that his convictions for reckless driving causing death and OWI causing death violate his double-jeopardy protections.

Burns finally contends the trial court did not properly instruct the jury when it failed to address M Crim JI 3.19.[3] However, Burns's lawyer expressly approved the trial court's reading of the jury instructions. A defense lawyer's "affirmative expression of satisfaction with the trial court's jury instruction waived any error." *People v Chapo*, 283 Mich App 360, 372-373; 770 NW2d 68 (2009). There is, therefore, no error for this Court to review related to the jury instructions.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Allie Greenleaf Maldonado

---

[3] M Crim JI 3.19 provides:

(1) The defendant is charged with one wrongful act in alternative counts, that is, that he is guilty of Operating While Intoxicated Causing Death or Reckless Driving Causing Death, but not both.

(2) You should consider these alternatives separately in light of all the evidence.

(3) You may find the defendant not guilty, guilty of Operating While Intoxicated Causing Death or guilty of Reckless Driving Causing Death.